AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

FILED
ENTERED
LODGED
RECEIVED

JUL 11 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

CERTIFIED TRUE COPY
ATTEST: WILLIAM M. McCOOL
Clerk, U.S. District Court
Western District of Washington
BY Emily Neel
Deputy Clerk

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of                )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
A residence at 6409 Ripley Lane SE, and other )
locations, more fully described in Attachments A-1, )
A-2, and A-3                                  )

Case No. MJ19-315

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachments A-1, A-2, and A-3, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1341, 1343, 1956 1957, 26 U.S.C. 7206(1) | Mail fraud, wire fraud, money laundering, filing a false tax return |

The application is based on these facts:
✓   See Affidavit of SA Eric Hergert, continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Eric Hergert, Special Agent
*Printed name and title*

⊙ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: July 11, 2019

_____
*Judge's signature*

City and state:  Seattle, Washington

Michelle L. Peterson, United States Magistrate Judge
*Printed name and title*

USAO: 2018R01443

# AFFIDAVIT

STATE OF WASHINGTON ) 
                          )    ss 
COUNTY OF KING         )

I, Eric Hergert, being first duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.　　I am a Special Agent with Internal Revenue Service, Criminal Investigation (IRS-CI), and have been so employed since September 2009.  I am presently assigned to IRS-CI's Western Area Cyber Crime Unit in the Los Angeles Field Office.  My duties and responsibilities include the investigation of possible criminal violations of the Internal Revenue laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the Money Laundering Control Act of 1986 (Title 18, United States Code, Sections 1956 and 1957), and other related offenses.

2.　　I earned a Bachelor of Arts degree in accounting from the University of Washington, Tacoma, in 2002.  I attended the Criminal Investigator Training Program and the IRS Special Agent Basic Training at the Federal Law Enforcement Training Center (FLETC) where I received detailed training in conducting financial investigations. The training included search and seizure, the Internal Revenue laws, and IRS procedures and policies in criminal investigations.  I have also attended various cybercrime and virtual currency related trainings, including at FLETC and others.

3.　　Before being hired by IRS-CI, I was employed as a Revenue Agent for the IRS for approximately five years, performing civil examinations of small businesses and self-employed individuals.  As a Revenue Agent, I received approximately 16 weeks of specialized training in personal, partnership, and corporate income tax, as specified in the Internal Revenue Code.

4.　　I have conducted and assisted in numerous investigations involving financial crimes.  I have led and participated in the execution of search warrants and have

Affidavit of Eric Hergert
in support of search warrants - 1
USAO No. 2018R01443

1 interviewed witnesses and defendants who were involved in, or had knowledge of,

2 violations of the Internal Revenue Code, the Bank Secrecy Act, and the Money

3 Laundering Control Act.  In the course of my employment with IRS-CI, I have conducted

4 and have been involved in investigations of alleged criminal violations, which have

5 included tax evasion (26 U.S.C. § 7201), filing a false tax return (26 U.S.C. § 7206(1)),

6 aiding or assisting in the preparation of false tax returns (26 U.S.C. § 7206(2)),

7 conspiring to defraud the United States (18 U.S.C. § 371), wire and mail fraud (18 U.S.C.

8 §§ 1343, 1341), aggravated identity theft (18 U.S.C. § 1028A), and money laundering (18

9 U.S.C. §§ 1956, 1957), among others.

10      5.     I have led and participated in the execution of federal search warrants and

11 the consensual searches of records relating to the concealment of assets and proceeds

12 derived from fraud.  These records included, but were not limited to, email accounts,

13 instant messages, personal telephone books, photographs, bank records, escrow records,

14 credit card records, tax returns, business books and records, and computer hardware and

15 software.

16      6.     I also have specialized training in cryptocurrencies, with a focus on Bitcoin

17 and Ethereum.  This has included training into how publically viewable "blockchains"

18 record cryptocurrency transactions, how to trace funds through these transactions,

19 attribution techniques used to identify individuals responsible for conducting the

20 transactions, and methods used by individuals to obfuscate the source of, or their control

21 of, cryptocurrencies.  I have used these techniques in prior and ongoing investigations.

22 Additionally, I have conducted cryptocurrency training for others, both internal to the

23 IRS, as well as for external third parties.

24      7.     I make this affidavit in support of an application under Rule 41 of the

25 Federal Rules of Criminal Procedure for a warrant to search the following locations, more

26 fully described in Attachments A-1, A-2, and A-3 to this Affidavit, for the property and

27 items described in Attachment B to this Affidavit, as well as any digital devices or other

28

Affidavit of Eric Hergert
in support of search warrants - 2
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1  electronic storage media located therein.  Attachments A-1, A-2, A-3, and Attachment B

2  are attached hereto and incorporated herein by this reference.

3       8.     The premises located at 6409 Ripley Lane Southeast, Renton, Washington,

4  hereinafter "SUBJECT LOCATION," further described in Attachment A-1.

5       9.     The Tesla vehicle with VIN 5YJSA1E40JF249750, hereinafter "SUBJECT

6  VEHICLE," further described in Attachment A-2.

7       10.    The person of VOLODYMYR KVASHUK, hereinafter "KVASHUK."

8  KVASHUK is a twenty-five (25) year-old male, with dark brown hair, brown eyes, a

9  height of six feet and one inch, and weighing 175 pounds, per the Washington State

10 Department of Licensing. KVASHUK is further described in Attachment A-3.

11      11.    The facts set forth in this Affidavit are based on my own personal

12 knowledge; knowledge obtained from other individuals during my participation in this

13 investigation, including other law enforcement officers; review of documents and records

14 related to this investigation; communications with others who have personal knowledge

15 of the events and circumstances described herein; and information gained through my

16 training and experience.

17      12.    Because this Affidavit is submitted for the limited purpose of establishing

18 probable cause in support of the application for a search warrant, it does not detail each

19 and every fact and circumstance I or others have learned during the course of this

20 investigation.  Furthermore, the investigation is ongoing, including the gathering and

21 analysis of records.  I have set forth only the facts that I believe are necessary to establish

22 probable cause to believe that evidence, fruits and instrumentalities of Mail Fraud, in

23 violation of Title 18, United States Code, Section 1341, Wire Fraud, in violation of Title

24 18, United States Code, Section 1343, Money Laundering, in violation of Title 18, United

25 States Code, Sections 1956(a)(1) and 1957, and Filing a False Tax Return, in violation of

26 Title 26, United States Code 7206(1), will be found at the SUBJECT LOCATION, in the

27 SUBJECT VEHICLE, and on KVASHUK's person.

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

## SUMMARY OF THE FRAUDULENT SCHEME

13.     The target of this investigation is VOLODYMYR KVASHUK.  The investigation has shown that KVASHUK devised and executed a scheme to defraud Microsoft Corporation ("Microsoft").  KVASHUK worked for Microsoft and was assigned to test the company's online retail sales platform.  In that role, KVASHUK was supposed to make simulated purchases of Microsoft products from the company's online store.  The testing system was designed to ensure that no physical products would be shipped.  KVASHUK, however, used test accounts to purchase massive amounts of "currency stored value," or "CSV," such as digital gift cards.  The testing program was not supposed to involve purchases of CSV, and no mechanisms were in place to prevent the delivery of valuable CSV to the tester.  The investigation has shown that KVASHUK, in his role as a tester, purchased millions of dollars of CSV, which he then resold on the Internet.  KVASHUK used the proceeds of the fraud to purchase, among other things, a $160,000 Tesla car and a $1.6 million home in Renton.

## SUMMARY OF THE INVESTIGATION

14.     As part of this investigation, I have obtained records from numerous sources, met with counsel for Microsoft, and interviewed Microsoft employees who investigated the CSV theft.

### Microsoft's Program To Test Online Retail Sales

15.     Microsoft has given me a copy of VOLODYMYR KVASHUK's resume, which shows that he is a Seattle-based software engineer.  According to information provided by Microsoft, KVASHUK was an employee of a Microsoft vendor.  As part of his employment with the vendor, KVASHUK worked on matters for Microsoft from August 26, 2016, until October 1, 2017.  During that time, KVASHUK worked out of Microsoft's office and had access to the company's computer network.  On December 1, 2017, Microsoft hired KVASHUK as a full-time employee with an annual salary of approximately $116,000.  KVASHUK worked for Microsoft until June 22, 2018.

Affidavit of Eric Hergert
in support of search warrants - 4
USAO No. 2018R01443

1       16.    Microsoft sells various products to the general public over the Internet via

2 its online store.  To make purchases from the Microsoft store, a customer must establish a

3 Microsoft store account that is linked to an email address and to one or more payment

4 devices (such as a credit card).  As both an employee of an outside vendor, and as a

5 Microsoft employee, KVASHUK was a member of Microsoft's Universal Store Team

6 ("UST"), which supports the company's online retail platform by (among other things)

7 managing a program that tests the online sales system.

8       17.    The testing program involves creating test Microsoft store accounts that are

9 linked to test email accounts created specifically for the purpose of the testing program.

10 A tester creates a test email account by using a naming convention for the account: the

11 name begins with "mstest," followed by an underscore and the user name of the tester.

12 The tester then requests that the UST team "whitelist" the account, meaning that

13 purchases made from the account will automatically bypass Microsoft's security and risk

14 protocols, which monitor online purchases in order to detect possible fraud.  The test

15 accounts are linked to artificial payment devices ("Test in Production" or "TIP" cards) –

16 in effect, phony credit cards – that allow the tester to simulate a purchase without

17 generating an actual charge.  Once the whitelisted account is created, the tester uses that

18 account to attempt to make online product purchases from Microsoft, just as an ordinary

19 consumer would.  Although each test account was created for a particular tester, the login

20 and password information for the test accounts was stored in an electronic document that

21 was accessible to multiple testers.  Microsoft investigators told me that, in practice,

22 testers sometimes used test accounts set up for other testers.

23       18.    According to Microsoft, the testing program was designed to test the

24 company's online sales of physical goods only.  When a tester used a whitelisted account

25 to purchase physical goods, the system ensured that no goods were actually delivered.

26       19.    According to Microsoft, the testing program was not designed for simulated

27 purchases of electronic currency stored value ("CSV"), such as digital gift cards.  Testers

28 were not authorized to use test accounts to make test purchases of CSV.  Because

Affidavit of Eric Hergert
in support of search warrants - 5
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   Microsoft did not expect testers to purchase CSV, the system had no safeguards to

2   prevent the delivery of actual, usable CSV to a tester who made a purchase from a

3   whitelisted account.  Accordingly, if a tester did purchase CSV, the system would

4   generate a valid and usable product "key" that could be "redeemed," meaning that the

5   value of the digital currency would be added to an electronic "wallet" linked to a

6   customer account.  Once redeemed, the CSV could be used to buy both physical and

7   digital products from the Microsoft store.

8          The Theft Of $10 Million In Microsoft's Digital Currency

9          20.     According to information provided by Microsoft, in February of 2018,

10  Microsoft's UST Fraud Investigation Strike Team ("FIST") noticed a suspicious increase

11  in the use of CSV to buy subscriptions to Microsoft's Xbox live gaming system from

12  Microsoft's online store.  FIST investigated and discovered that the suspicious CSV had

13  originally been purchased from Microsoft through two whitelisted test accounts

14  associated with the email accounts mstest_avestu@outlook.com and

15  mstest_sfwe2eauto@outlook.com (the "avestu" and "sfwe2eauto" test accounts).  The

16  CSV was then resold on the secondary market, at a steep discount, via at least two online

17  reseller websites, g2a.com and nokeys.com. Customers who purchased the CSV on the

18  secondary market then redeemed the CSV at Microsoft's online store for Xbox live

19  subscriptions.

20         21.     The websites g2a.com and nokeys.com are located at IP addresses

21  88.198.39.152 and 67.229.64.252, respectively.  According to open source research, the

22  servers hosting these websites are located in Germany and California, respectively.  All

23  transmissions of CSV information to be sold through these websites are communication

24  by wire through interstate or foreign commerce if those transmissions originate in

25  Washington state.

26         22.     The avestu and sfwe2eauto test accounts were not established by

27  KVASHUK, but rather by other Microsoft employees.  However, the username and

28  passwords for those and other test accounts were stored on Microsoft's network, giving

Affidavit of Eric Hergert
in support of search warrants - 6
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

KVASHUK and many other Microsoft employees access to them. FIST discovered that the avestu and swfe2eauto test accounts were used to buy a large amount of CSV between November 2017 and March 2018. The avestu and swfe2eauto accounts were blocked by Microsoft on or about March 15, 2018. FIST later discovered that a third test account linked to mstest_zabeerj2@outlook.com (the "zabeerj2" test account) was also responsible for a suspicious spike in CSV purchases, conducting approximately 166 purchases of CSV between March 22 and March 23, 2018. This account was blocked on or about March 23, 2019

23.    The three suspicious test accounts were used to purchase roughly $10.1 million in CSV from Microsoft. Microsoft was able to "blacklist" roughly $1.8 million in CSV to prevent it from being redeemed, resulting in a total loss to Microsoft of approximately $8.3 million.

CSV Redemptions by Acquisition Account

| Account | 2017 | 2018 | Total |
|---------|------|------|-------|
| Mstest_avestu | $357,595.00 | $1,298,010.00 | $1,655,605.00 |
| Mstest_swfe2eauto | $601,261.27 | $5,444,340.04 | $6,045,601.31 |
| Mstest_zabeerj2 | $0.00 | $643,380.00 | $643,380.00 |
| **Total** | **$958,856.27** | **$7,385,730.04** | **$8,344,586.31** |

24.    Microsoft interviewed the employees who created the three suspicious test accounts and found no evidence that they were involved in the fraudulent CSV purchases.

Evidence Of Kvashuk's Involvement In The Theft

25.    A variety of evidence shows that KVASHUK was involved in the CSV theft from Microsoft.

Affidavit of Eric Hergert
in support of search warrants - 7
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

*Kvashuk's Use Of His Own Test Account For Theft*

26.     As an initial matter, KVASHUK has admitted to Microsoft investigators that he used the Microsoft store test account that he created – linked to mstest_v-vokvas@outlook.com (the "vokvas" test account") – to make unauthorized purchases.  Microsoft records show that the vokvas test account made purchases (typically of CSV) on April 28, July 10, September 29, October 4, October 7, October 11, and October 22 of 2017.  The amount of CSV obtained through the vokvas account totaled approximately $12,304.99, of which approximately $4,464.99 was redeemed.[1]

27.     On October 7, 2017, the vokvas test account was used to purchase an electronic "token" for a subscription to Microsoft Office for $164.99.  That token was redeemed by a Microsoft store account linked to the email address admin@searchdom.io.  Microsoft records show that the name on the Microsoft online store account for "searchdom" is "Volo kvashuk," and the address is an apartment complex, 5035 15th Avenue, Unit 101, in Seattle (the "15th Avenue" apartment).  A copy of KVASHUK's resume (provided by Microsoft) lists him as the co-founder and Chief Technology Officer of "SearchDom."  Washington Secretary of State records list KVASHUK as a "governor" for Searchdom, Inc.  Also listed as a "governor" in Secretary of State records is "L.W."  Additionally, L.W. is the registrant contact for the domain name searchdom.io.  According to records obtained from Namecheap, the domain name was registered in January 21, 2017.

28.     According to Microsoft records, KVASHUK's vokvas test account was used to purchase approximately $10,164.99 in CSV in October 2017.

29.     On October 22 and 24, 2017, approximately $2,500 in CSV obtained by the vokvas test account was redeemed to Microsoft store accounts linked to the email addresses pikimajado@tinoza.org (the "pikimajado" account) and xidijenizo@axsup.net

---

[1] Approximately $100 of the redeemed CSV appears to have been in Canadian currency.  It was not possible to determine from the records available how much of the $12,3043.99 in CSV obtained through the vokvas account was in a foreign currency.

Affidavit of Eric Hergert
in support of search warrants - 8
USAO No. 2018R01443

1   (the "xidijenizo" account).  Subscriber information has not been obtained for these email

2   addresses.  Based on my open source research, it appears these email addresses may be

3   associated with temporary email services.  These services often do not log subscriber

4   information, and only keep the email account active for a few minutes.

5        30.    On October 22 and 24, 2017, the redeemed funds in the pikimajado and

6   xidijenizo accounts were used to order three GeForce GTX 1070 video or "graphics"

7   cards with a total cost of approximately $2,024.58 from Microsoft's online store.[2]

8   Microsoft's records show that the name and address associated with the Microsoft online

9   store accounts linked to the  pikimajado and xidijenizo  email accounts is "Grigor shikor"

10  at the same 15th Avenue apartment complex that KVASHUK lived at, but at Unit 309

11  (instead of KVASHUK's unit, 101).  Microsoft provided the FedEx tracking numbers for

12  the shipment of these cards.  By entering the tracking numbers into FedEx's website, I

13  was able to determine that the video cards were shipped from Ontario, California to

14  Seattle, Washington on or about October 22nd and 24th of 2017.  Additionally, FedEx's

15  website indicated that at least one of the video cards was delivered to the recipient

16  address.

17       31.    From my training and experience, I know that FedEx is a "private or

18  commercial interstate carrier" as that term is used in Title 18, United States Code,

19  Section 1341.

20       32.    Public records searches did not identify anyone by the name of "Grigor

21  Shikor" in Washington.  However, a Grigoriy Kvashuk was identified as living in

22  Oregon.  As part of my investigation, I obtained phone records for 951-397-8122, which

23  is listed as KVASHUK's phone on his resume.  The subscriber name on that account is

24  "Grigory Kvashuk."  Additionally, the Washington Department of Licensing lists

25  KVASHUK and Grigoriy Kvashuk as registered owners of a Honda Insight.

26  _____

27  [2] Microsoft records show attempts to access the vokvas test account from IP addresses located in Russia and Japan
    on October 22, 2017.  These may have been attempts by KVASHUK to disguise his IP address, although that has
28  not been confirmed.

Affidavit of Eric Hergert
in support of search warrants - 9
USAO No. 2018R01443

33.     According to Microsoft records, approximately $600 of the CSV purchased by the vokvas account was redeemed to a Microsoft store account linked to the email address safirion@outlook.com (the "safirion" account).  The registered name associated with the safirion@outlook.com email account is "volo kv".  The current address is on 7th Avenue in Seattle, and the former address was KVASHUK's apartment at the 15th Avenue complex.

34.     Microsoft investigators interviewed KVASHUK on May 10 and May 18 of 2018.  Although no law enforcement officer was at those interviews, I have listened to recordings of the interviews.  The interviews were not completely recorded because of a technical problem, but I have also read summaries of the interviews and spoken with Microsoft investigator Andy Cookson, who was present at both interviews.

35.     The interviewers asked KVASHUK about the purchases made with the vokvas test account.  KVASHUK admitted that he had created the vokvas account.  He also admitted to making some unauthorized purchases from the account.  KVASHUK suggested that there was a lack of guidance from his superiors about what could and could not be purchased via a test account, and claimed to have only been told that test accounts should not be used to purchase subscriptions.[3]  KVASHUK claimed that he believed it was permissible to use test accounts to buy CSV because it was not "real" money.

36.     KVASHUK admitted to Microsoft investigators that he used his test account to purchase CSV.  He admitted that the "safirion" account was his personal account, and that he used stolen CSV to buy movies from the Microsoft store.  KVASHUK admitted that he had tried to buy a video card, but claimed that it had never arrived.

---

[3] Microsoft investigators have told me that the testers may not have been specifically told that purchasing CSV was prohibited, as the possibility that testers would purchase CSV was simply not contemplated.

Affidavit of Eric Hergert
in support of search warrants - 10
USAO No. 2018R01443

1      37.    The investigators asked KVASHUK about the video cards purchased (using

2  CSV obtained by the vokvas test account) in the name of "Grigor Shikor" at Unit 309 of

3  the 15th Avenue complex. KVASHUK denied purchasing those cards. When asked if he

4  knew "Grigor Shikor," KVASHUK initially said, "it's complicated," but then denied

5  knowing him.[4] KVASHUK admitted that he lived at the 15th Avenue complex, but

6  denied receiving the cards.

7      38.    With respect to the Office subscription purchased by the searchdom

8  account (using a token obtained by the vokvas test account), KVASHUK said that he and

9  another person were business partners in SearchDom. KVASHUK said that he did not

10  remember this event and suggested that he might have made a mistake.

11      39.    According to Microsoft records, prior to November 22, 2017, all of the

12  CSV acquired through the vokvas account was redeemed to Microsoft online store

13  accounts associated with the email addresses admin@searchdom.io,

14  xidijenizo@axsup.net, or pikimajado@tinzoa.org.

15      40.    According to records obtained from Google, on November 22, 2017, at

16  approximately 12:17 PM, KVASHUK conducted an internet search for "cash in xbox

17  gift." Then KVASHUK immediately visited the website, gameflip.com. Gameflip.com

18  advertises that it allows users to list Xbox Live gift cards for sale on its site. After a gift

19  card is purchased by a customer, Gameflip.com deposits the proceeds into the seller's

20  "gameflip wallet." The seller can then withdraw the proceeds "any time into your

21  PayPal, bank account, or Bitcoin."

22      41.    Subsequently, on November 22, 2017, at approximately 7:48 PM, $50

23  Canadian of CSV acquired through the vokvas account was redeemed to an unknown

24  individual's Microsoft store account associated with the email address

25  sunmoon94@hotmail.ca. Over the next few days, approximately 12 more redemptions of

26  CSV acquired by the vokvas account (totaling approximately $1,150 ($50 of which was

27

28  [4] This part of the interview was not recorded.

Affidavit of Eric Hergert
in support of search warrants - 11
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   Canadian)) were made to Microsoft store accounts associated with email addresses with

2   no known connection to KVASHUK.  Based on this information, it appears he began

3   selling the CSV through third party websites on or about November 22, 2017.

4        *Evidence Linking KVASHUK to CSV Thefts Through Other Test Accounts.*

5        42.    The vast majority of the $10 million in stolen CSV was obtained through

6   the avestu, sfwe2eauto, and zabeerj2 test accounts.  As noted, although these accounts

7   were created by other testers, KVASHUK would have had access to the login information

8   necessary to access these accounts.  Furthermore, Microsoft investigators told me that –

9   by using test accounts set up for other testers, rather than this own test account –

10  KVASHUK made it more difficult for Microsoft to identify him as a suspect in the

11  thefts.[5]  Based on information provided by Microsoft, it appears that these accounts were

12  used to make unauthorized CSV purchases from approximately November 26, 2017,

13  through March 23, 2018.[6]  As best as can be determined from the available information,

14  it appears that CSV was resold (most likely at a steep discount) through online resellers

15  to customers who used the CSV to make purchases from Microsoft's online store.

16       43.    Although KVASHUK admitted to only making very limited purchases of

17  CSV from his test account, the investigation has shown probable cause to believe that

18  KVASHUK used the avestu, sfwe2eauto, and zabeerj2 accounts to make unauthorized

19  CSV purchases.  Some of the evidence comes in the form of Internet Protocol ("IP")

20  address data.  An IP address is a numerical label assigned to each device that is connected

21  to a computer network that accesses the Internet.  In general, Microsoft's online sales

22  platform records the IP addresses used to access the company's website.  However,

23  because the test accounts bypassed several safeguards, IP addresses were only captured

24  on approximately 489 of 1,554 transactions.

25

26

---

27  [5] As previously noted, Microsoft investigators also told me that the test accounts were sometimes shared among testers who were using the accounts for legitimate testing.

28  [6] KVASHUK was not employed at Microsoft for the early part of this time period, but could have used any Internet-enabled device to access and log into the test accounts.

Affidavit of Eric Hergert
in support of search warrants - 12
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

44.     Microsoft records show that between December 29, 2017, and March 23, 2018, at least $2.4 million of CSV was purchased using the avestu, sfwe2eauto, and zabeerj2 accounts in over 400 transactions from devices using at least 34 different IP addresses beginning with 173.244.44, including IP addresses 173.244.44.19 (February 2018 and March 2018), 173.244.44.37 (December 2017 and March 2018), 173.244.44.58 (February 2018 and March 2018), and 173.244.44.89 (January 2018, February 2018, and March 2018).  Microsoft investigators initially told me that they believed that the IP addresses beginning in 173 were publicly-available IP address (such as one might find at a coffee shop with WiFi) because other Microsoft employees had logged in via these addresses.  As set forth below, however, my investigation suggests that "173" IP addresses are not publicly available.

45.     The investigation has shown that KVASHUK used a 173.244.44.* IP address to access a Microsoft store account linked to his personal email address, kvashuk.volodymyr@gmail.com (the "kvashuk" account)[7] at least nine times between December 2 and December 19 of 2017, including IP addresses 173.244.44.19, 173.244.44.37, and 173.244.44.58.  He also logged into his Coinbase cryptocurrency account using IP address 173.244.44.89 on December 2, 2017.  However, no incidents have been identified where KVASHUK used a 173.244.44.* IP address and a test account used the same IP address on the same day to purchase CSV.

46.     Records obtained through the course of the investigation indicate that IP addresses 173.244.44.19, 173.244.44.37, 173.244.44.58, and 173.244.44.89 are assigned to the company London Trust Media, Inc.  This company operates a virtual private network[8] (VPN) service that specializes in anonymity online under the name Private

---

[7] The kvashuk.volodymyr@gmail.com account is listed as KVASHUK's personal account on his resume.
[8] A virtual private network (VPN) is programming that creates a safe and encrypted connection over a less secure network, such as the public internet. A VPN works by using the shared public infrastructure while maintaining privacy through security procedures and tunneling protocols. In effect, the protocols, by encrypting data at the sending end and decrypting it at the receiving end, send the data through a "tunnel" that cannot be "entered" by data that is not properly encrypted. Often times, a VPN will also provide a proxy server service. With this service, a

Affidavit of Eric Hergert
in support of search warrants - 13
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1  Internet Access through the website www.privateinternetacess.com.  The use of a VPN

2  can effectively conceal the true IP addresses that somebody is using to connect to the

3  Internet.  While I am continuing to investigate the 173.244.44.* IP addresses, I believe

4  that all of the 173.244.44.* IP addresses associated to this investigation are controlled by

5  London Trust Media, Inc.  Microsoft records show that Microsoft employees other than

6  KVASHUK have logged in via the 173.244.44.* IP addresses.  Based on my training and

7  experience, this does not suggest that the IP addresses are publicly available, but rather

8  that other Microsoft employees have also used the London Trust VPN service.

9       47.    Internet activity associated with the kvashuk.volodymyr@gmail.com

10  account obtained from Google via a search warrant shows that KVASHUK conducted

11  searches for terms related to, or visited websites for, Private Internet Access (or "PIA") at

12  least once on November 27, 2017, and at least six times on December 17, 2017.  The

13  internet searches include the terms "pia hide tor traffic," "pia," "pia port forwarding," and

14  "pia virus."  Google records show he visited a Private Internet Access helpdesk article

15  shortly after conducting these searches titled "Can I use TOR[9] with the Private Internet

16  Access service."  These searches suggest that, during the same time that the fraud scheme

17  was ramping up, KVASHUK was researching ways to conceal his identity on the

18  Internet.

19       48.    According to records obtained from Microsoft, the first date a 173.244.44.*

20  IP address was used to obtain CSV as part of this scheme was on December 29, 2017,

21  when a CSV "purchase" was made through the avestu account.  IP addresses in the

22  173.244.44.* range were used several times to obtain CSV through the avestu,

23  sfwe2eauto, and zabeerj2 accounts through March 23, 2018.

24

25

---

26  user's true IP address is masked when accessing resources on the internet, such as websites.  The internet resource
   would only be able to see the IP address of the proxy server.

27  [9] In this context, TOR appears to be an acronym for "The Onion Router."  TOR is an open-source software program
   that allows users to disguise their IP address through encryption and by bouncing their internet traffic through

28  multiple other computers on the internet while operating compatible software.

Affidavit of Eric Hergert
in support of search warrants - 14
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

49.     Based on my training and experience, KVASHUK may have believed that by using a VPN service specializing in online anonymity to commit the fraud, he could disguise his involvement in the crimes. Specifically, according to the Private Internet Access website, their VPN service provides "IP Cloaking" by masking a user's IP address with one of their anonymous IP addresses. Based on KVASHUK's experience as a software developer, and his experience working with Microsoft on their online store, I believe he would know that the Microsoft online store records the IP address of the users conducting transactions, and that a VPN service would mask his true IP address, thereby disguising his involvement.

50.     Another IP address, 4.35.246.19, was also used to access the avestu and sfwe2eauto test accounts at least 24 times for purchases of over $131,000 in CSV in connection with the fraud. The IP address was also used to access three Microsoft store accounts linked to KVASHUK. It was used at least 54 times between October 24, 2017 and November 24, 2017 to access the pikimajdo and xidijenizo accounts (the accounts used to order the graphics cards delivered to "Grigory Shikor" at KVASHUK's apartment complex) and used at least 21 times on November 24, 2017 to access the vokvas test account (the test account created by KVASHUK). This IP address is registered to Level 3 Communications. By the time this IP address was provided to investigators, subscriber records for the dates and times in question were outside of Level 3 Communications' retention period.

51.     A third IP address, 50.243.108.211, was used five times on December 12, 2017, to purchase approximately $39,500 of CSV using the sfwe2eauto test account. It was also used to access the vokvas account on June 5, 2017 and October 22, 2017, and the xidijenizo account on October 22, 2017. The same IP address had also been used on February 20, 2017 by KVASHUK when opening an account with the cryptocurrency exchange Coinbase. As discussed below, KVASHUK deposited at least some of the proceeds of the fraud into this Coinbase account. Level 3 Communications also provides end user service for this IP address. By the time this IP address was provided to

Affidavit of Eric Hergert
in support of search warrants - 15
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   investigators, subscriber records for the dates and times in question were outside of Level

2   3 Communications' retention period.

3        52.    The fact that all of the above IP addresses are linked to both KVASHUK

4   and the test accounts used to commit the fraud strongly suggests KVASHUK's

5   involvement in the crime.

6        53.    KVASHUK is also linked to the avestu and sfwe2eauto accounts through a

7   technology known as "Fuzzy Device" identification.  When a person uses a particular

8   device to access Microsoft's online store, that device leaves a digital trail known as a

9   "Fuzzy Device" identifier.  According to Microsoft, although it is theoretically possible

10  for two devices to have the same Fuzzy Device ID, it is very unlikely.  As a result, if

11  multiple logins are made from the same Fuzzy Device ID, there is a strong inference that

12  the same device (a particular computer, cell phone, etc.) was used to make all of those

13  logins.

14       54.    Between October 22, 2017, and November 26, 2017, Microsoft's records

15  show the same Fuzzy Device ID for logins to accounts known or believed to be

16  associated with KVASHUK (the vokvas, xidijenizo, and pikimajado accounts) as well as

17  at least some logins to the accounts by which most of the CSV was stolen (avestu and

18  sfwe2eauto).  Similarly, Microsoft records show that the user who logged into all of those

19  accounts was, on at least some occasions, running the same version of the Linux

20  operating system and the same outdated version of the Mozilla Firefox browser – further

21  evidence that a single device logged into all of those accounts.

22       55.    The fuzzy device ID bb92c484-876b-4d87-adca-943b90a2d98e (the "98e"

23  ID) was the only fuzzy device ID used to make purchases on the Microsoft online store

24  by the accounts associated with the email addresses pikimajado@tinzoa.org and

25  xidijenizo@axsup.net.  The 98e ID was also used to make purchases on the Microsoft

26  online store by the vokvas, avestu, and swfe2eauto accounts.  According to Microsoft, no

27  other Microsoft store accounts were associated with the 98e ID.

28

Affidavit of Eric Hergert
in support of search warrants - 16
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

56.   Based on my training and experience, I know that the term "Device ID" is a generic industry term for an identifier for an electronic device. Some devices have a unique identifier specifically labeled as a "Device ID" by a hardware manufacturer. When one hardware manufacturer, website, government agency, or any other company refers to the identification of, collection of, or use of a "Device ID," they are generally talking about a different identifier or mechanism for generating a Device ID that is unique to that manufacturer or other entity. Device IDs are generally used to identify multiple transactions conducted by the same device.

57.   I also know that Device IDs are often created by collecting a very large collection of not-so-unique browser and system components that a web-browser allows a website to view/collect, such as operating system, web-browser, screen resolution, and many other settings. If any of the settings used to calculate the Device ID change, the Device ID will change. An individual with knowledge of Device IDs could disguise the fact that they are conducting multiple transactions from the same device by changing some of these settings. Additionally, Device IDs would change if the individual used more than one device, or used virtual machines[10] to simulate the use of more than one device.

58.   In total, Microsoft captured Fuzzy Device ID information on approximately 223 of the 1,554 purchases of CSV using the avestu, sfwe2eauto, and zabeerj2 accounts.[11] Over the course of the scheme, a total of 14 different Fuzzy Device IDs were captured on these 223 transactions. Most of the Fuzzy Device IDs were only used to purchase the CSV for one day. This could be indicative of using multiple devices, or the use of virtual machines. The first Fuzzy Device ID listed on the chart

---

[10] A virtual machine is simulated computer that runs its own operating system that runs like an application on another computer. The end user has a similar experience on a virtual machine as they would have if the operating system were installed on its own device. Several virtual machines can be installed on a single computer, and can be created in a short period of time. The use of a virtual machine could conceal the Device ID of the underlying device.

[11] Fuzzy Device ID information was only captured for transactions conducted through the avestu and sfwe2eauto accounts.

Affidavit of Eric Hergert
in support of search warrants - 17
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

below – the 98e address – was used to access the vokvas, xidijenizo, and pikimajado accounts between October 22 and 24, 2017, and was also used to access the avestu and sfwe2eauto test accounts to make CSV purchases on November 26, 2017.  This strongly suggests that the same device was used to access both accounts known to be linked to KVASHUK as well as the test accounts used to commit the fraud.

| Device ID | Identified Purchase Transactions | Date Range |
|---|---|---|
| bb92c484-876b-4d87-adca-943b90a2d98e | 6 | 11/26/2017 |
| 58b04a06-d52c-481b-9050-34d1f5c64aab | 20 | 12/2/2017 – 12/13/2017 |
| 3bab2d39-29f9-4332-bc96-3121a57d99cd | 1 | 12/3/2017 |
| c2313cdc-a005-421b-9fa9-159d2adbdf53 | 3 | 12/7/2017 |
| aa29eee2-3f6d-45b4-9c01-cfa320b962b1 | 11 | 12/9/2017 – 12/12/2017 |
| 455010cd-e513-44c1-8fc0-f4495b0d7453 | 6 | 12/10/2017 |
| 6d2a6011-99b5-48be-b00c-130450b26272 | 12 | 12/14/2017 |
| d117e690-0627-4624-912f-3a636457bf6d | 19 | 12/15/2017 |
| ec76885c-6718-4857-8cd9-8ea3f11ed30e | 12 | 12/16/2017 |

Affidavit of Eric Hergert
in support of search warrants - 18
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

| 84925e6b-035f-4138-9b41-b2dbbb13efce | 10 | 12/17/2017 |
| 3b0d8c07-3656-4c4c-b938-8441c8c43716 | 17 | 12/19/2017 – 12/20/2017 |
| 21c35123-ccef-474f-ade4-8fd96984975d | 79 | 12/22/2017 – 1/4/2018 |
| 486e5a23-b428-478c-99ed-7c25c8d76b25 | 25 | 1/12/2018 |
| 0424b94c-9e86-4abd-a9f4-bfce92f962a1 | 2 | 1/20/2018 |

Internet activity associated with the kvashuk.volodymyr@gmail.com account obtained from Google via a search warrant shows that KVASHUK searched for terms related to, or visited websites for or related to, "VM" or "virtualbox" (a virtual machine software) at least twenty times between November 7, 2017, and November 25, 2017.

*Evidence of Unexplained Wealth*

59.     Financial records show that KVASHUK had a large amount of unexplained income during the period of the CSV thefts.  According to his tax returns for 2016 and 2017, KVASHUK only had total income of $35,260 and $114,103, respectively. According to Microsoft, for the portion of time KVASHUK was a direct employee (December 2017 to June 2018), his annual salary was $116,000.

60.     I have reviewed records for a checking account that KVASHUK had at Wells Fargo bank, ending in -5789.  The earliest daily balance shown on the records was $429.56 on July 29, 2016.  The balance on the account remained under $20,000 until late November of 2017, when large amounts of money from a cryptocurrency account in KVASHUK's name at Coinbase.com, began to flow into the -5789 account.  On November 30, 2017, over $14,000 was transferred to the -5789 account from

Affidavit of Eric Hergert
in support of search warrants - 19
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1    Coinbase.com.[12]  On December 11, 2017, over $6,600 was transferred from

2    Coinbase.com to the -5789 account.  On December 21, 2017, there was a transfer of over

3    $29,000 from Coinbase.com to the -5789 account.

4        61.    The suspicious transfers escalated dramatically in early 2018.  For example,

5    on January 30th, February 2nd, and February 6th of 2018, there were transfers from

6    Coinbase of over $98,000, $177,000 and $134,000, respectively.  On a single day –

7    March 2, 2018 – over $500,000 was transferred from Coinbase to the -5789 account.

8    Over $1.4 million was transferred in total in March 2018, followed by over $935,000 in

9    April.

10        62.    All told, over $2.8 million was transferred from Coinbase to the -5789

11    account between November 2017 and May 2018.  The approximate timeframe of the vast

12    majority of the fraud was November 2017 through March 2018.  Given these timeframes,

13    and based on my training and experience, it appears that KVASHUK had converted the

14    proceeds of the fraud into cryptocurrency (or received the proceeds as cryptocurrency),

15    and then gradually converted the cryptocurrency in fiat currency and transferred the

16    proceeds to his Wells Fargo account.

17        63.    Furthermore, in order to determine the source of the cryptocurrency

18    "bitcoin" in the Coinbase account, I have examined the bitcoin blockchain, a public

19    ledger of bitcoin transactions.  I determined that the vast majority of the bitcoin deposited

20    into the Coinbase account originated from chipmixer.com. Chipmixer.com is a bitcoin

21    "mixing" service which appears to be located in Germany.  A bitcoin mixing service

22    mixes potentially identifiable bitcoin with others, with the intent to obscure and conceal

23    the original source of the bitcoin.  Based on my training and experience, the use of

24    chipmixer.com is further evidence of an attempt to conceal proceeds of the fraud.

25

26

27

28    ---
      [12] Of the $14,876.98 transferred, $5,024.01 was proceeds from the sale of Ethereum cryptocurrency.  This
      cryptocurrency had been obtained in June 2017, and is not believed to be proceeds from the wire fraud scheme.

Affidavit of Eric Hergert
in support of search warrants - 20
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1    64.   In addition to the bitcoin sourced from chipmixer.com, I was able to trace a

2  deposit of 1.5 bitcoin into KVASHUK's Coinbase account on November 29, 2017 from

3  Paxful.com. Paxful.com is a peer-to-peer cryptocurrency trading site. This site allows

4  users to purchase bitcoin with gift cards, including Xbox gift cards. Internet activity

5  associated with the kvashuk.volodymyr@gmail.com account obtained from Google via a

6  search warrant showed KVASHUK searched for terms related to, or visited websites for

7  or related to, paxful.com at least three times between November 24, 2017 and November

8  27, 2017. This is further evidence of KVASHUK researching matters relevant to the

9  fraud at the approximate time that the fraud scheme ramped up dramatically.

10    65.   As part of my investigation, I analyzed the value of bitcoin (in United

11  States dollars) deposited into KVASHUK's Coinbase account and compared it to the

12  purchases and redemptions of CSV.[13] I was able to determine that, while significantly

13  lower, the value of the bitcoin deposits to KVASHUK's Coinbase account generally

14  correlated with the value of the purchased and redeemed CSV. The reasons for the lower

15  value could include KVASHUK selling the CSV at a discount, bitcoin's general decline

16  in value during early 2018, or that not all of the proceeds from this scheme have been

17  identified.

18

19

20

21

22

23

24

25

26

27

28

---

[13] This analysis does not take into account the value of any CSV that was blacklisted by Microsoft.

Affidavit of Eric Hergert
in support of search warrants - 21
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970



......... CSV Purchases USD Balance      ━ ━ CSV Redemptions USD Balance
▭▭▭ Bitcoin Deposits USD Balance

66.     KVASHUK has used his unexplained wealth to make significant purchases. In March of 2018, KVASHUK paid roughly $162,000 for a Tesla vehicle. A Tesla Model S with the vehicle identification number (VIN) 5YJSA1E40JF249750 (the "SUBJECT VEHICLE") was registered with the Washington Department of Licensing to KVASUK in April 2018.

67.     According to title company records, in June of 2018, KVASHUK bought *as sole owner NW* a lakeside home in Renton (the SUBJECT LOCATION) for roughly $1.675 million.

68.     KVASHUK told Microsoft investigator Andrew Cookson, in an interview on May 16, 2018, that he had rented a new place since the last time they spoke. In truth, records obtained during that investigation show that he had accepted a purchase agreement for the SUBJECT LOCATION as of approximately April 1, 2018, and a rental agreement to occupy the property prior to closing dated April 19, 2018. Email messages from Amazon.com to KVASHUK show purchases of items to be delivered to him at the SUBJECT LOCATION as early as April 24, 2018.

69.     Surveillance conducted on the SUBJECT LOCATION has repeatedly identified a Honda Insight parked in front of the house, including as recently as June 28,

Affidavit of Eric Hergert
in support of search warrants - 22
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1  2019.  According to Washington Department of Licensing records, KVASHUK is listed

2  as a registered owner for the vehicle.

3  *False Tax Returns*

4  70.  On or about February 24, 2018, KVASHUK electronically filed a 2017

5  Form 1040, *U.S. Individual Income Tax Return*, with the IRS.  The tax return appears to

6  have been self-prepared by KVASHUK using the website 1040.com.  The tax return

7  reported income of $109,440 from wages, and net gains of $4,663 from the sale of

8  various cryptocurrencies, including bitcoin, for total reported income of $114,103.

9  Deposits into KVASHUK's Wells Fargo bank account *5789 in 2017 totaled

10  $139,680.76.

11  71.  On or about February 21, 2019, a 2018 Form 1040, *U.S. Individual Income*

12  *Tax Return*, was filed electronically for KVASHUK by Tax Rite, Inc.  The tax return was

13  prepared by a paid return preparer.  The tax return reported income of $76,927 from

14  wages, $9,968 from dividends, and a loss of $71,745 (limited to a deductible loss of

15  $3,000) from the sale of investments and cryptocurrency, including bitcoin, for total

16  reported income of $83,895.  Deposits into KVASHUK's Wells Fargo bank account

17  *5789 in 2018 totaled $2,925,374.48.

18  72.  As shown above, KVASHUK, through his scheme to defraud Microsoft,

19  acquired CSV totaling approximately $971,161.26 in 2017 and $7,385,730.04 in 2018 at

20  no cost to himself.  These amounts are includable in his gross income, and are taxable in

21  the year they are received.

22  73.  KVASHUK did report the income from the sales of bitcoin to Coinbase

23  discussed above.  However, in 2017 he only reported a taxable gain (sales price less

24  basis) of approximately $1,547 in 2017 and a loss of approximately $69,418 in 2018.

25  The limited gain and the loss reported on the tax returns appear to be the result of

26  KVASHUK using the value of the bitcoin at the time he deposited them into his Coinbase

27  account as his basis.  In truth, because the bitcoin were obtained as proceeds of his

28  scheme to defraud, and since KVASHUK did not report the income from his scheme to

Affidavit of Eric Hergert
in support of search warrants - 23
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1  defraud, his basis in the bitcoin should have been $0. If this were the case, he would
2  have had income from the sale of bitcoin obtained through the scheme of $47,715 in 2017
3  and $2,846,041 in 2018, based on the sales proceeds reported on his respective tax
4  returns.

5       74.   On December 19, 2017, KVASHUK emailed J.P. from taxhotline.net.
6  Based on the context of the email, it appears to be a follow-up discussion to a prior phone
7  call. In the message, KVASHUK indicated he was receiving gifts from his father in the
8  form of bitcoin and questioned how to show on a tax return that the funds were a gift so
9  he wouldn't "have any troubles in the future." He specifically noted that his father
10  purchased the bitcoin with cash, and therefore had no records of the purchase.

11       75.   On February 5, 2019, KVASHUK emailed D.L., his tax return preparer,
12  regarding the preparation of KVASHUK's 2018 tax return. In the email, he told D.L.
13  that his father sent him bitcoin, which he sold to Coinbase for cash, and references a
14  computer file that appears to be a report from Coinbase regarding transactions conducted
15  in his Coinbase account. Based on my review of the tax return, the proceeds from bitcoin
16  sales reported on the tax return reconcile to the U.S. currency withdrawn from Coinbase,
17  and the cost basis claimed materially reconciles to the U.S. dollar value recorded by
18  Coinbase at the time the bitcoin was deposited to KVASHUK's account.

19       76.   As discussed above, while conducting blockchain analysis on the bitcoin
20  deposited into KVASHUK's Coinbase account, I was able to determine that the majority
21  of the bitcoin appeared to trace back to Paxful.com and Chipmixer.com.

22       77.   Additionally, an email between KVASHUK and his father on May 18,
23  2018 includes copies of a 2018 non-immigrant visa application for KVASHUK's father
24  which stated his father was a university lecturer with a monthly income of 30,000 in
25  Ukranian currency. Based on the exchange rate on that day, this would be approximately
26  $1,156 per month.

27       78.

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

**PROBABLE CAUSE REGARDING THE PLACES TO BE SEARCHED**

79.     As set forth above, there is probable cause to believe that evidence of the offenses of mail fraud, wire fraud, money laundering, and tax fraud may be found in the locations to be searched.

80.     Based on my training and experience, people often keep personal, financial, and tax records in their home. KVASHUK listed the SUBJECT LOCATION as his residence on his 2018 tax return.

81.     According to records received from Comcast, KVASHUK received internet service at the SUBJECT LOCATION. Their records show this internet service was assigned the IP address 73.109.141.71 from at least November 22, 2018 through January 23, 2019. According to these records, this IP address was scheduled to remain assigned to this service through May 17, 2019 (after which Comcast may have either re-assigned that IP address, or assigned a new one, as Comcast typically assigns IP addresses for a sixth month period). Records obtained through the course of the investigation have identified this IP address being used to access KVASHUK's Coinbase account, KVASHUK's Gmail email account, KVASHUK's PayPal account, KVASHUK's Poloniex cryptocurrency account, KVASHUK's Blockchain.info cryptocurrency account, and KVASHUK's Microsoft store account (associated with his email address kvashuk.volodymyr@gmail.com). These account accesses occur beginning April 28, 2018 and continuing through April 29, 2019. The use of this IP address to access online accounts is indicative of digital devices being at the SUBJECT LOCATION.

82.     According to Washington Department of Licensing records reviewed on June 13, 2019, the SUBJECT VEHICLE is registered to the SUBJECT LOCATION.

83.     Based on my training and experience, I know that many people generally keep their cell phones and other digital devices on their person, in their home, in their vehicle, or in other places under their dominion and control. KVASHUK appears to regularly park his car in his garage, a relatively secure location that makes it more likely that he would at least briefly store digital devices in the vehicle. The crimes in this case

Affidavit of Eric Hergert
in support of search warrants - 25
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

*In the past week, agents have seen KVASHUK driving the SUBJECT VEHICLE at the SUBJECT LOCATION.* ⊕ MR

1  were committed almost entirely via digital devices, and thus there is probable cause to

2  believe that evidence will be found on digital devices which may be stored in the vehicle.

3    84.    According to records provided by Google, KVASHUK has a Samsung

4  phone that has been active and associated with his Gmail account from August 2017

5  through at least May 1, 2019.  Location records received from Google often place this

6  phone at the SUBJECT LOCATION, including during evening hours when people are

7  usually at home, from at least April 23, 2018 through April 28, 2019[14].

8    85.    A bitcoin "Private Key" is essentially a password allowing the holder to

9  spend bitcoin held at a bitcoin address with an associated "Public Key."  Since anyone

10  that has access to a Private Key can control the bitcoin located in the associated address,

11  the security of a Private Key is very important.  Based on my training and experience, I

12  know that Private Keys, or the means to calculate a Private Key, may be stored either in a

13  digital format or written down.  I also know that people often keep Private Key

14  information on their phones, computers, or in their homes.

15  **COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS**

16    86.    As described above and in Attachment B, this application seeks

17  permission to search for evidence, fruits and instrumentalities that might be

18  found at the SUBJECT LOCATION, in whatever form they are found.  One

19  form in which the evidence, fruits, and/or instrumentalities might be found is

20  data stored on digital devices[15] such as computer hard drives or other

21

22

23  ────────────────

24  [14] The search warrant to Google for location data was obtained April 29, 2019.  April 28, 2019 was the most recent date for which location data was provided.

25  [15] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral

26  input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security

27  devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global

28  positioning satellite devices (GPS), or portable media players.

Affidavit of Eric Hergert
in support of search warrants - 26
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

electronic storage media.[16] Thus, the warrant applied for would authorize the seizure of digital devices or other electronic storage media or, potentially, the copying of electronically stored information from digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

87.    *Probable cause.*  Based upon my review of the evidence gathered in this investigation, my review of data and records, information received from other agents and computer forensics examiners, and my training and experience, I submit that if a digital device or other electronic storage media is found at the SUBJECT LOCATION, in the SUBJECT VEHICLE, or on KVASHUK's person, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes of wire fraud, mail fraud, money laundering, and filing false tax returns will be stored on those digital devices or other electronic storage media.  As described above, information developed through the course of this investigation has shown that digital devices or other electronic storage media were used to access the Microsoft's online store, set up and access email accounts, conduct online research in furtherance of the scheme, purchase and redeem CSV, communicate with one or more tax preparers, and conduct bitcoin transactions.  There is, therefore, probable cause to believe that evidence, fruits and/or instrumentalities of the crimes of wire fraud, mail fraud, money laundering, and filing false tax returns exists and will be found on digital devices or other electronic storage media at the SUBJECT LOCATION, SUBJECT VEHICLE, and on KVASHUK's person, for at least the following reasons:

a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to a digital device or other electronic storage

---

[16] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

Affidavit of Eric Hergert
in support of search warrants - 27
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1    medium can be stored for years at little or no cost.  Even when files have

2    been deleted, they can be recovered months or years later using forensic

3    tools.  This is so because when a person "deletes" a file on a digital device

4    or other electronic storage media, the data contained in the file does not

5    actually disappear; rather, that data remains on the storage medium until it

6    is overwritten by new data.

7    b.   Therefore, deleted files, or remnants of deleted files, may reside in free

8    space or slack space—that is, in space on the digital device or other

9    electronic storage medium that is not currently being used by an active

10   file—for long periods of time before they are overwritten.  In addition, a

11   computer's operating system may also keep a record of deleted data in a

12   "swap" or "recovery" file.

13   c.   Wholly apart from user-generated files, computer storage media—in

14   particular, computers' internal hard drives—contain electronic evidence of

15   how a computer has been used, what it has been used for, and who has used

16   it.  To give a few examples, this forensic evidence can take the form of

17   operating system configurations, artifacts from operating system or

18   application operation; file system data structures, and virtual memory

19   "swap" or paging files.  Computer users typically do not erase or delete this

20   evidence, because special software is typically required for that task.

21   However, it is technically possible to delete this information.

22   d.   Similarly, files that have been viewed via the Internet are sometimes

23   automatically downloaded into a temporary Internet directory or "cache."

24   88.   Based on actual inspection of email messages, cryptocurrency transactions,

25   and tax returns, I am aware that digital devices and other electronic storage media were

26   used to generate, store, and transmit documents and other information used in the wire

27   fraud, tax evasion, and money laundering schemes.  There is reason to believe that there

28   is a computer system currently located at the SUBJECT LOCATION.

Affidavit of Eric Hergert
in support of search warrants - 28
USAO No. 2018R01443

89.   *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located at the SUBJECT LOCATION, in the SUBJECT VEHICLE, or on KVASHUK's person because:

a.   Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the digital device or other electronic storage media that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the history of connections to other . computers, the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.   As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry

Affidavit of Eric Hergert
in support of search warrants - 29
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.[17]   Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may

---

[17] For example, if the examination of a computer shows that: a) at 11:00am, someone using the computer used an internet browser to log into a bank account in the name of John Doe; b) at 11:02am the internet browser was used to download child pornography; and c) at 11:05 am the internet browser was used to log into a social media account in the name of John Doe, an investigator may reasonably draw an inference that John Doe downloaded child pornography.

Affidavit of Eric Hergert
in support of search warrants - 30
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   also indicate the presence of additional electronic storage media (e.g., a digital

2   camera or cellular phone with an incorporated camera).  The geographic and

3   timeline information described herein may either inculpate or exculpate the

4   computer user.  Last, information stored within a computer may provide

5   relevant insight into the computer user's state of mind as it relates to the

6   offense under investigation.  For example, information within the computer

7   may indicate the owner's motive and intent to commit a crime (e.g., internet

8   searches indicating criminal planning), or consciousness of guilt (e.g., running

9   a "wiping" program to destroy evidence on the computer or password

10  protecting/encrypting such evidence in an effort to conceal it from law

11  enforcement).

12  c.   A person with appropriate familiarity with how a digital device or other

13  electronic storage media works can, after examining this forensic evidence in

14  its proper context, draw conclusions about how the digital device or other

15  electronic storage media were used, the purpose of their use, who used them,

16  and when.

17  d.   The process of identifying the exact files, blocks, registry entries, logs, or

18  other forms of forensic evidence on a digital device or other electronic storage

19  media that are necessary to draw an accurate conclusion is a dynamic process.

20  While it is possible to specify in advance the records to be sought, digital

21  evidence is not always data that can be merely reviewed by a review team and

22  passed along to investigators.  Whether data stored on a computer is evidence

23  may depend on other information stored on the computer and the application of

24  knowledge about how a computer behaves.  Therefore, contextual information

25  necessary to understand other evidence also falls within the scope of the

26  warrant.

27  e.   Further, in finding evidence of how a digital device or other electronic

28  storage media was used, the purpose of its use, who used it, and when,

Affidavit of Eric Hergert
in support of search warrants - 31
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1    sometimes it is necessary to establish that a particular thing is not present. For

2    example, the presence or absence of counter-forensic programs or anti-virus

3    programs (and associated data) may be relevant to establishing the user's

4    intent.

5    90.    The search warrant requests authorization to use the biometric unlock

6 features of a device, based on the following, which I know from my training, experience,

7 and review of publicly available materials:

8    a.  Users may enable a biometric unlock function on some digital devices. To

9    use this function, a user generally displays a physical feature, such as a

10    fingerprint, face, or eye, and the device will automatically unlock if that

11    physical feature matches one the user has stored on the device. To unlock a

12    device enabled with a fingerprint unlock function, a user places one or more of

13    the user's fingers on a device's fingerprint scanner for approximately one

14    second. To unlock a device enabled with a facial, retina, or iris recognition

15    function, the user holds the device in front of the user's face with the user's

16    eyes open for approximately one second.

17    b.  In some circumstances, a biometric unlock function will not unlock a

18    device even if enabled, such as when a device has been restarted or inactive,

19    has not been unlocked for a certain period of time (often 48 hours or less), or

20    after a certain number of unsuccessful unlock attempts. Thus, the opportunity

21    to use a biometric unlock function even on an enabled device may exist for

22    only a short time. I do not know the passcodes of the devices likely to be

23    found in the search.

24    c.  Thus, the warrant I am applying for would permit law enforcement

25    personnel to, with respect to any device that appears to have a biometric sensor

26    and falls within the scope of the warrant: (1) depress KVASHUK's thumb

27    and/or fingers on the device(s) that agents have probable cause to believe

28    eithers belongs to him, or that he has access to, and (2) hold the device(s) that

1    agents have probable cause to believe belong to him in front of his face, with

2    each of his eyes open to activate the facial-, iris-, or retina-recognition feature,

3    in order to gain access to the contents of any such device.

4    **DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES**

5        91.    Digital devices were used as instrumentalities throughout several parts of

6    the scheme.  Specifically, digital devices were used (among other things) to create the

7    pikimajado@tinoza.org and xidijenizo@axsup.net email addresses, create and access

8    Microsoft online store accounts, "purchase" CSV through Microsoft store test accounts,

9    redeem CSV through the Microsoft store, order video cards through the Microsoft store,

10   and conduct bitcoin transactions with the proceeds from the scheme.

11   **PAST EFFORTS TO OBTAIN THIS EVIDENCE**

12       92.    Search warrants were obtained for information associated with various

13   email accounts used in this scheme on April 29, 2019.  Information obtained from these

14   search warrants included content of stored email messages, web search history, cell

15   phone location history, subscriber details, and related information.

16       93.    The evidence sought through this search warrant has not been previously

17   available to me or other agents, apart from the information described above.

18   **RISK OF DESTRUCTION OF EVIDENCE**

19       94.    I know based on my training and experience that digital information can be

20   very fragile and easily destroyed.  Digital information can also be easily encrypted or

21   obfuscated such that review of the evidence would be extremely difficult, and in some

22   cases impossible.  In the instant case, I know based on KVASHUK's internet search

23   history that he may use encryption on the computer systems he utilizes to engage in his

24   crimes.  For example, on multiple dates in November and December 2017, KVASHUK

25   searched for information on sending encrypted messages.  On December 14, 2019,

26   KVASHUK searched for information on encrypting flash drives. If an encrypted

27   computer is either powered off or if the user has not entered the encryption password and

28   logged onto the computer, it is likely that any information contained on the computer will

Affidavit of Eric Hergert
in support of search warrants - 33
USAO No. 2018R01443

1  be impossible to decipher.  If the computer is powered on, however, and the user is

2  already logged onto the computer, there is a much greater chance that the digital

3  information can be extracted from the computer.  This is because when the computer is

4  on and in use, the password has already been entered and the data on the computer is

5  accessible.  However, giving the owner of the computer time to activate a digital security

6  measure, pull the power cord from the computer, or even log off of the computer could

7  result in a loss of digital information that could otherwise have been extracted from the

8  computer.

9  **REQUEST FOR AUTHORITY TO CONDUCT OFF-SITE SEARCH OF TARGET**

10  **COMPUTERS**

11      95.   *Necessity of seizing or copying entire computers or storage media.*  In most

12  cases, a thorough search of premises for information that might be stored on digital

13  devices or other electronic storage media often requires the seizure of the physical items

14  and later off-site review consistent with the warrant.  In lieu of removing all of these

15  items from the premises, it is sometimes possible to make an image copy of the data on

16  the digital devices or other electronic storage media, onsite.  Generally speaking, imaging

17  is the taking of a complete electronic picture of the device's data, including all hidden

18  sectors and deleted files.  Either seizure or imaging is often necessary to ensure the

19  accuracy and completeness of data recorded on the item, and to prevent the loss of the

20  data either from accidental or intentional destruction.  This is true because of the

21  following:

22      a.  *The time required for an examination.* As noted above, not all evidence

23          takes the form of documents and files that can be easily viewed on site.

24          Analyzing evidence of how a computer has been used, what it has been used

25          for, and who has used it requires considerable time, and taking that much time

26          on premises could be unreasonable. As explained above, because the warrant

27          calls for forensic electronic evidence, it is exceedingly likely that it will be

28          necessary to thoroughly examine the respective digital device and/or electronic

Affidavit of Eric Hergert
in support of search warrants - 34
USAO No. 2018R01443

storage media to obtain evidence.  Computer hard drives, digital devices and electronic storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.  *Technical requirements*.  Digital devices or other electronic storage media can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises.  However, taking the items off-site and reviewing them in a controlled environment will allow examination with the proper tools and knowledge.

c.  *Variety of forms of electronic media*.  Records sought under this warrant could be stored in a variety of electronic storage media formats and on a variety of digital devices that may require off-site reviewing with specialized forensic tools.

## SEARCH TECHNIQUES

96.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

97.     Because other people are believed to share the SUBJECT LOCATION as a residence, it is possible that the SUBJECT LOCATION will contain digital devices or other electronic storage media that are predominantly used, and perhaps owned, by

Affidavit of Eric Hergert
in support of search warrants - 35
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   persons who are not suspected of a crime.  If agents conducting the search nonetheless

2   determine that it is possible that the things described in this warrant could be found on

3   those computers, this application seeks permission to search and if necessary to seize

4   those computers as well.  It may be impossible to determine, on scene, which computers

5   contain the things described in this warrant.  In the event that it can be determined that a

6   digital device is used solely by individuals not associated with the scheme, a new search

7   warrant will be obtained prior to seizing and searching the device.

8        98.    Consistent with the above, I hereby request the Court's permission to seize

9   and/or obtain a forensic image of digital devices or other electronic storage media that

10  reasonably appear capable of containing data or items that fall within the scope of

11  Attachment B to this Affidavit, and to conduct off-site searches of the digital devices or

12  other electronic storage media and/or forensic images, using the following procedures:

13  **Processing the Search Sites and Securing the Data.**

14        a.  Upon securing the physical search site, the search team will conduct an

15           initial review of any digital devices or other electronic storage media located at

16           the locations described in Attachments A-1, A-2, and A-3 that are capable of

17           containing data or items that fall within the scope of Attachment B to this

18           Affidavit, to determine if it is possible to secure the data contained on these

19           devices onsite in a reasonable amount of time and without jeopardizing the

20           ability to accurately preserve the data.

21

22        b.  In order to examine the electronically stored information ("ESI") in a

23           forensically sound manner, law enforcement personnel with appropriate

24           expertise will attempt to produce a complete forensic image, if possible and

25           appropriate, of any digital device or other electronic storage media that is

26

27

28

Affidavit of Eric Hergert
in support of search warrants - 36
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   capable of containing data or items that fall within the scope of Attachment B

2   to this Affidavit.[18]

3

4   c.  A forensic image may be created of either a physical drive or a logical

5   drive.  A physical drive is the actual physical hard drive that may be found in a

6   typical computer.  When law enforcement creates a forensic image of a

7   physical drive, the image will contain every bit and byte on the physical drive.

8   A logical drive, also known as a partition, is a dedicated area on a physical

9   drive that may have a drive letter assigned (for example the c: and d: drives on

10  a computer that actually contains only one physical hard drive).  Therefore,

11  creating an image of a logical drive does not include every bit and byte on the

12  physical drive.  Law enforcement will only create an image of physical or

13  logical drives physically present on or within the subject device.  Creating an

14  image of the devices located at the search locations described in Attachments

15  A-1, A-2, and A-3 will not result in access to any data physically located

16  elsewhere.  However, digital devices or other electronic storage media at the

17  search locations described in Attachments A-1, A-2, and A-3 that have

18  previously connected to devices at other locations may contain data from those

19  other locations.

20

21  d.  If based on their training and experience, and the resources available to

22  them at the search site, the search team determines it is not practical to make an

23  ────────────────────

24  [18] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or
    other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound,

25  scientific procedures.  When the investigative agent is a trained computer forensic examiner, it is not always
    necessary to separate these duties.  Computer forensic examiners often work closely with investigative personnel to

26  assist investigators in their search for digital evidence.  Computer forensic examiners are needed because they
    generally have technological expertise that investigative agents do not possess.  Computer forensic examiners,

27  however, often lack the factual and investigative expertise that an investigative agent may possess on any given
    case.  Therefore, it is often important that computer forensic examiners and investigative personnel work closely

28  together.

Affidavit of Eric Hergert
in support of search warrants - 37
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1   on-site image within a reasonable amount of time and without jeopardizing the

2   ability to accurately preserve the data, then the digital devices or other

3   electronic storage media will be seized and transported to an appropriate law

4   enforcement laboratory to be forensically imaged and reviewed.

5

6   **Searching the Forensic Images.**

7       a.  Searching the forensic images for the items described in Attachment B may

8   require a range of data analysis techniques.  In some cases, it is possible for

9   agents and analysts to conduct carefully targeted searches that can locate

10  evidence without requiring a time-consuming manual search through unrelated

11  materials that may be commingled with criminal evidence.  In other cases,

12  however, such techniques may not yield the evidence described in the warrant,

13  and law enforcement may need to conduct more extensive searches to locate

14  evidence that falls within the scope of the warrant.  The search techniques that

15  will be used will be only those methodologies, techniques and protocols as

16  may reasonably be expected to find, identify, segregate and/or duplicate the

17  items authorized to be seized pursuant to Attachment B to this affidavit.  Those

18  techniques, however, may necessarily expose many or all parts of a hard drive

19  to human inspection in order to determine whether it contains evidence

20  described by the warrant.

21      b.  Agents may utilize hash values to exclude certain known files, such as the

22  operating system and other routine software, from the search results. However,

23  because the evidence I am seeking does not have particular known hash values,

24  agents will not be able to use any type of hash value library to locate the items

25  identified in Attachment B.

26

27

28

Affidavit of Eric Hergert
in support of search warrants - 38
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

**REQUEST FOR SEALING**

99.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  This is an ongoing investigation, and the target does not know the details of what investigators have learned and what evidence has been gathered.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness by resulting in the flight of the target, the destruction of evidence, transfer or concealment of proceeds, or the intimidation or influencing of witnesses.

**CONCLUSION**

100.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of the crimes of mail fraud, wire fraud, money laundering, and filing of false tax returns are located at the SUBJECT LOCATION, in the SUBJECT VEHICLE, and on KVASHUK's person, as more fully described in Attachments A-1, A-2, and A-3 to this Affidavit, as well as on and in any digital devices or other electronic storage media found therein.  I therefore request that the Court issue a warrant authorizing a search of the SUBJECT LOCATION, SUBJECT VEHICLE, and KVASHUK's person, as well as any digital devices and electronic storage media located therein, for the items more fully described in Attachment B hereto, incorporated herein //

//

//

//

//

//

//

//

Affidavit of Eric Hergert
in support of search warrants - 39
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

by reference, and the seizure of any such items found therein.

ERIC HERGERT
Special Agent,
Internal Revenue Service

SUBSCRIBED and SWORN to before me this ___11ᵀᴴ___ day of July, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

Affidavit of Eric Hergert
in support of search warrants - 40
USAO No. 2018R01443

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A-1

### Location to be Searched

The SUBJECT LOCATION is the residence and surrounding property located at 6409 Ripley Lane SE, Renton, WA 98056.  The residence is a multi-story, single family residence located at the north end of Ripley Lane SE.  The building has reddish wood grain and blue siding, a green metal roof, and the numbers 6409 on the south facing, southeast corner.

Attachments to Affidavit of Eric Hergert
in support of search warrants - 1
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

# ATTACHMENT A-2

## Vehicle to be Searched

The SUBJECT VEHICLE is a Tesla with the VIN 5YJSA1E40JF249750.  According to Washington Department of Licensing records, the vehicle is registered to VOLODYMYR KVASHUK at 6409 Ripley Lane Southeast, Renton, Washington, 98056.  Department of Licensing records identify the vehicle as a Tesla 2018 Model S sedan with the Washington license plate number BJW9291.

Attachments to Affidavit of Eric Hergert
in support of search warrants - 2
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A-3**

**Person to be Searched**

The person of VOLODYMYR KVASHUK.  VOLODYMYR KVASHUK is a twenty-
five year old male, born on November 24, 1993 in the Ukraine.  According to his
Washington State Driver's License, he is six feet, one inch tall, weighs 175 pounds, and
has brown eyes.

The search of VOLODYMYR KVASHUK shall include any and all clothing and
personal belongings, including any digital devices, backpacks, wallets, briefcases, and
bags that are in his physical possession, or within his immediate vicinity and control at
the location where the search warrant is executed.

Attachments to Affidavit of Eric Hergert
in support of search warrants - 3
USAO No. 2018R01443

**ATTACHMENT B**

**Items to be Seized**

The following records, documents, files, or materials, in whatever form, including handmade or mechanical form (such as printed, written, handwritten, or typed); photocopies or other photographic form; and electrical, electronic, and magnetic form (such as tapes, cassettes, hard disks, floppy disks, diskettes, compact discs, CD-ROMs, DVDs, optical discs, Zip cartridges, printer buffers, smart cards, or electronic notebooks, or any other electronic storage medium) that constitute evidence, instrumentalities, or fruits of violations of Mail Fraud, in violation of Title 18, United States Code, Section 1341, Wire Fraud, in violation of Title 18, United States Code, Section 1343, Money Laundering, in violation of Title 18, United States Code, Sections 1956(a)(1) and 1957, and Filing a False Tax Return, in violation of Title 26, United States Code, Section 7206:

1. All records relating to violations of the above statutes and involving VOLODYMYR KVASHUK, including:

    a. Indicia of residence, ownership, control, or use of the SUBJECT LOCATION, the SUBJECT VEHICLE, cryptocurrency wallets and addresses, Microsoft CSV or gift card information, email accounts, bank and other financial accounts, and digital devices;

    b. Evidence of use of the Microsoft online store, including usernames, passwords, or other login information, associated email addresses, dates and times of access, items purchased, and device ID information;

    c. Material related to Microsoft's testing program for its online store;

    d. Evidence of research or communications, including online research, in furtherance of the crimes;

Attachments to Affidavit of Eric Hergert
in support of search warrants - 4
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

e.   Stored records, communication, and related information regarding the source, acquisition, use, transfer, or disposition of CSV, gift cards, cryptocurrency, or potential proceeds of the fraud, in any form;

f.   Evidence of use of virtual private networks, virtual machines, encryption, temporary email accounts, or bitcoin mixers;

g.   Evidence of communication, access of websites, transactions conducted, and related information with 3rd party resellers or peer-to-peer transfers of CSV or gift cards;

h.   Tax returns, workpapers, supporting documents, communication regarding the preparation of tax returns or tax regulations, procedures, or laws, and information regarding research or knowledge of tax regulations, procedures, or laws;

i.   All bank records, checks, credit card bills, account information, tax returns, and other financial records, including records showing the source, deposit, withdrawal, transfer, or disposition of scheme proceeds;

j.   All cryptocurrency wallets, to include current balance and transaction history, or information that could be used to reconstruct cryptocurrency transaction history, whether included in a cryptocurrency wallet file or separate, in either digital or paper form;

k.   Evidence of use of other names, including but not limited to "Grigor Shikor" and "Vladamir," along with alternate spellings of these names;

l.   GeForce GTX 1070 computer video cards; and

m.   Evidence related to the finances of members of KVASHUK's family who are a possible source of funds or income.

Attachments to Affidavit of Eric Hergert
in support of search warrants - 5
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

2.     Digital devices[1] or other electronic storage media[2] and/or their components, which include:

    a.  Any digital device or other electronic storage media capable of being used to commit, further, or store evidence of the offenses listed above;

    b.  Any digital devices or other electronic storage media used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, plotters, encryption devices, and optical scanners;

    c.  Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

    d.  Any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

    e.  Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

    f.  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

---

[1] "Digital device" includes any device capable of processing and/or storing data in electronic form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet computers, computer servers, peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media, related communications devices such as modems, routers and switches, and electronic/digital security devices, wireless communication devices such as mobile or cellular telephones and telephone paging devices, personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming devices, global positioning satellite devices (GPS), or portable media players.
[2] Electronic Storage media is any physical object upon which electronically stored information can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

Attachments to Affidavit of Eric Hergert
in support of search warrants - 6
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

g. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

3. Any digital devices or other electronic storage media that were or may have been used as a means to commit the offenses described on the warrant, including devices used to:

a. obtain, redeem, or transfer Microsoft CSV, gift cards, or similar information;

b. access the Microsoft online store, Private Internet Access, or other virtual private networks;

c. communicate with, or access 3rd party CSV or gift card reseller websites;

d. access email accounts associated with the scheme, or created and accessed temporary email accounts;

e. conduct cryptocurrency transactions, including creating accounts, transferring cryptocurrency, and selling cryptocurrency;

f. conduct financial transactions or store financial information, prepare tax returns or supporting information, or communicate with tax return preparers.

4. For any digital device or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, or that may contain things otherwise called for by this warrant, and in addition to the items set forth in 1(a)-1(m), above:

a. evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user

Attachments to Affidavit of Eric Hergert
in support of search warrants - 7
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f.  evidence of the times the digital device or other electronic storage media was used;

g.  passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

h.  documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

i.  contextual information necessary to understand the evidence described in this attachment.

5.  Records and things evidencing Internet Protocol addresses used to access the internet, including:

a.  routers, modems, and network equipment used to connect computers to the Internet;

b.  records of Internet Protocol addresses used;

Attachments to Affidavit of Eric Hergert
in support of search warrants - 8
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970

c.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

d.  records of Virtual Private Network (VPN) software or use; or use of a proxy service; and

e.  records related to Device Identification Numbers.

6.      During the execution of this search warrant, law enforcement is permitted to: (1) depress KVASHUK's thumb and/or fingers on the device(s) that agents have probable cause to believe belong to him; and (2) hold the device(s) that agents have probable cause to believe belong him in front of his face, with each of his eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

THE SEIZURE OF DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA AND/OR THEIR COMPONENTS AS SET FORTH HEREIN IS SPECIFICALLY AUTHORIZED BY THIS SEARCH WARRANT, NOT ONLY TO THE EXTENT THAT SUCH DIGITAL DEVICES OR OTHER ELECTRONIC STORAGE MEDIA CONSTITUTE INSTRUMENTALITIES OF THE CRIMINAL ACTIVITY DESCRIBED ABOVE, BUT ALSO FOR THE PURPOSE OF THE CONDUCTING OFF-SITE EXAMINATIONS OF THEIR CONTENTS FOR EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED CRIMES.

Attachments to Affidavit of Eric Hergert
in support of search warrants - 9
USAO No. 2018R01443

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101-1271
(206) 553-7970