UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br>     v.<br><br>VOLODYMYR KVASHUK,<br><br>                     Defendant. | CASE NO. CR19-0143JLR<br><br>ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL |

## I.    INTRODUCTION

Before the court is the oral motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 made by Defendant Volodymyr Kvashuk during trial. (*See* 2/21/20 Minute Entry (Dkt. # 125).) The court has considered the motion, the relevant portions of the record, the argument of the parties, and the applicable law. Being fully advised, the court DENIES Mr. Kvashuk's motion for judgment of acquittal.

//

//

## II. BACKGROUND

**A.     The Indictment**

Plaintiff United States of America ("the Government") charged Mr. Kvashuk with 18 counts based on Mr. Kvashuk's alleged scheme to defraud Microsoft Corporation, his former employer, of more than $10 million in digital currency. (*See generally* 2d Sup. Indictment (Dkt. # 61).) Specifically, the Government charged Mr. Kvashuk with one count of access device fraud in violation of 18 U.S.C. § 1029, one count of access to a protected computer in furtherance of fraud in violation of 18 U.S.C. § 1030(a)(4), one count of mail fraud in violation of 18 U.S.C. § 1341, five counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of making and subscribing to a false tax return in violation of 26 U.S.C. § 7206, six counts of money laundering in violation of 18 U.S.C. § 1957, and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*See id.* ¶¶ 1-33.) Mr. Kvashuk's trial began on February 18, 2020. (*See* 2/18/20 Minute Entry (Dkt. # 96).) On February 25, 2020, the jury convicted Mr. Kvashuk on all 18 counts. (*See* Jury Verdict (Dkt. # 133).)

Mr. Kvashuk's motion seeks judgment of acquittal on Counts 17 and 18, which charge Mr. Kvashuk with aggravated identity theft. (*See* 2d Sup. Indictment ¶¶ 32-33.) In those counts, the Government charged Mr. Kvashuk with using the usernames and passwords for two Microsoft online store accounts in order to fraudulently obtain digital currency from Microsoft. (*See id.* ¶ 33.) Count 17 charged Mr. Kvashuk with using the "mstest_swfe2eauto@outlook.com" Microsoft online store account, which was assigned to account holder "A.C." (*See id.*) Count 18 charged Mr. Kvashuk with using the

"mstest_zabeerj2@outlook.com" account, which was assigned to account holder "Z.J." (*See id.*)

**B.     Pretrial Motion to Dismiss**

Mr. Kvashuk filed a pretrial motion to dismiss Counts 17 and 18 under Federal Rule of Criminal Procedure 12.[1] (*See* MTD (Dkt. # 55).) Mr. Kvashuk makes two arguments in support of his motion to dismiss. First, Mr. Kvashuk argues that a charge of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) requires the Government to prove that Mr. Kvashuk used the "means of identification" of a real person, but the indictment alleges only that Mr. Kvashuk used test accounts that belonged to Microsoft, who Mr. Kvashuk argues is not a real person. (*See* MTD at 3-6.) Second, Mr. Kvashuk argues that, in order to show he used the means of identification of "another person" as that term is used in 18 U.S.C. § 1028A(a)(1), the Government must show that Mr. Kvashuk used another person's means of identification without consent, which the indictment does not allege. (*See id.* at 6.)

The court orally denied Mr. Kvashuk's motion to dismiss. (*See* 12/16/19 Minute Entry (Dkt. # 75).) The court noted that the standard for Rule 12 motions binds the court to the four corners of the indictment and requires that the court accept the indictment's

---

[1] Although, Mr. Kvashuk's motion to dismiss sought dismissal of Count 14 of the indictment (*see* MTD at 1), the Government filed the second superseding indictment after Mr. Kvashuk filed his motion to dismiss (*see* 2d Sup. Indictment). The second superseding indictment added a number of additional counts, including one additional count of aggravated identity theft. (*See id.* ¶¶ 32-33.) On reply, Mr. Kvashuk confirmed that the arguments made in support of his motion to dismiss Count 14 of the superseding indictment applied equally to Counts 17 and 18 of the second superseding indictment. (*See* MTD Reply (Dkt. # 72) at 1-2.) Both parties confirmed at oral argument on the motion to dismiss that the motion applied to Counts 17 and 18 of the second superseding indictment.

allegations as true. The court then rejected both of Mr. Kvashuk's arguments and concluded that the second superseding indictment sufficiently alleged counts for aggravated identity theft.

**C.     Mr. Kvashuk's Trial**

At trial, M.W., a lead software engineer for Microsoft's Universal Store Team ("UST") and Mr. Kvashuk's supervisor at Microsoft, explained how Microsoft online store accounts worked for typical Microsoft online store users. M.W. testified that customers who want to make purchases from Microsoft's online store need to create a Microsoft account in order to do so. To create an account, users must provide Microsoft with an email address and a password for the account. In certain jurisdictions, users also need to enter a date of birth. Microsoft also prompts users to provide a first and last name for the account, but the email address that an individual provides to create the Microsoft store account becomes that individual's username. To sign into the Microsoft online store and make purchases, users are required to log in using their username and password. If a user purchases goods from the online store, the user must provide a payment method and a shipping address if the user purchases shippable goods.

M.W. also testified about test accounts that members of the UST create to perform their job duties at Microsoft. M.W. testified that Microsoft had a "Test in Production" or "TIP" program through which UST members test various aspects of the Microsoft online store to ensure that the store functions properly for Microsoft's customers. To participate in the TIP program, Microsoft employees create test Microsoft online store accounts. To set up test accounts, UST members create Microsoft Outlook email addresses to use as

the username for the test accounts. Test account usernames start with "mstest" markers and are followed by an underscore, a unique alias selected by the UST member setting up the test account, and the "@outlook.com" or "@hotmail.com" marker (e.g., "mstest_zabeerj2@outlook.com"). The UST member creating the account also creates a password for the account to complete the account set up process.

Once a UST member sets up a test account, the UST member asks Microsoft to "whitelist" the account and provide a test credit card, or a "TIP card," for use with the test account. When Microsoft whitelists a test account, that allows the account to bypass certain protocols that Microsoft puts in place for regular consumers so that UST members can freely test the functionality of the Microsoft online store. TIP cards are artificial credit cards that Microsoft provides to UST members that UST members link to their test accounts. Linking a TIP card to a test account allows UST members to simulate the customer purchasing process without triggering a real transaction.

The Government called multiple witnesses from the IRS and Microsoft who testified that someone had used the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test accounts to "purchase" millions of dollars of digital gift cards from Microsoft. Although Microsoft believed that the TIP program prevented testers from purchasing anything of value from the Microsoft online store, the Government's witnesses testified that if someone using a test account and a TIP card attempted to purchase a digital gift card from the Microsoft online store, the test account would receive an email that contained an authentic Microsoft digital gift card code that could be redeemed on the Microsoft online store. Evidence obtained from a search

warrant executed at Mr. Kvashuk's home showed that Mr. Kvashuk had the usernames and passwords for the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test accounts and spreadsheets listing thousands of Microsoft digital gift card codes stored on his computer. The Government also showed that IP addresses associated with Mr. Kvashuk accessed the Microsoft online store using the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test accounts.

M.W. testified that test accounts were unique to individual UST members and that he informed the UST members that he supervised that they should not share their test accounts with other employees—though he acknowledged that some UST members had shared their accounts in the past. M.W. also stated that the test accounts were meant for use as part of the TIP program and were not supposed to be used for personal matters or other Microsoft employment matters like human resources issues or inner-office communications.

Z.J., a software engineer and UST member at Microsoft, testified that he created the "mstest_zabeerj2@outlook.com" test account and the password associated with that account that serves as the basis for the aggravated identity theft count charged in Count 18. (*See* 2d Sup. Indictment ¶ 33.) Z.J. testified that he stored the password for that test account on a personal document that he did not share with other UST members and that he did not recall giving any other UST members permission to use the mstest_zabeerj2@outlook.com test account. He also testified that, although he knew Mr. Kvashuk, he never shared that test account with Mr. Kvashuk or gave Mr. Kvashuk permission to use the account. Z.J. testified that he first learned that someone had made

purchases of digital currency using his mstest_zabeerj2@outlook.com test account when Microsoft investigators interviewed him about purchases made with his test account.

A.C., another software engineer and UST member at Microsoft, also testified at trial. A.C.'s testimony mirrored Z.J.'s testimony. A.C. created the "mstest_swfe2eauto@outlook.com" test account and the password associated with that account that serves as the basis for the aggravated identity theft count charged in Count 17. (*See id.*) A.C. testified that the mstest_swfe2eauto@outlook.com test account was programed to do automated testing. A.C. further testified that the automation process required him to store the account information and password for the mstest_swfe2eauto@outlook.com account in a specific file that a program he designed could access in order to log in to the account. A.C. did not recall authorizing Mr. Kvashuk to use the mstest_swfe2eauto@outlook.com test account for personal purposes or to purchase digital currency. A.C. did note, however, that he may have given Mr. Kvashuk an overview of the automated testing process at one point during Mr. Kvashuk's employment and that it was possible that he showed Mr. Kvashuk where the account information and password was stored during that overview. Like Z.J., A.C. also found out that someone had made purchases of digital currency using his mstest_swfe2eauto@outlook.com test account when Microsoft investigators interviewed him about purchases made with his test account.

//

//

//

**D.     Motion for Judgment of Acquittal**

Mr. Kvashuk made his oral motion for judgment of acquittal at the close of the Government's case in chief. After hearing argument on the motion, the court advised the parties that it would take the motion under advisement and proceed with the trial.

### III.     ANALYSIS

At oral argument on Mr. Kvashuk's motion for judgment of acquittal, Mr. Kvashuk's counsel adopted the arguments raised in his pretrial motion to dismiss Counts 17 and 18. Thus, the court construes Mr. Kvashuk's motion for judgment of acquittal as raising the two primary arguments that Mr. Kvashuk raised in his pretrial motion to dismiss: (1) That the Government failed to prove that Mr. Kvashuk used the "means of identification" of a "real person" because the test accounts belonged to Microsoft and do not constitute a means of identification; and (2) the Government failed to show that Mr. Kvashuk used the identification of "another person," as that term is used in 18 U.S.C. § 1028A(a)(1), because Mr. Kvashuk had consent to use the two test accounts at issue. (*See generally* MTD at 2-6.) The court first outlines the standard for a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 before turning to the merits of Mr. Kvashuk's argument.

**A.     Legal Standard**

Pursuant to Rule 29, upon a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "In determining whether evidence was insufficient to sustain a conviction, we consider whether, 'after viewing the evidence in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Gagarin*, --- F.3d ---, No. 18-10026, 2020 WL 727761, at *3 (9th Cir. Feb. 13, 2020) (quoting *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (*en banc*)).  The aggravated identity theft statue, states that it is a felony to use, "without lawful authority, a means of identification of another person" during and in relation to an enumerated felony.  *See* 18 U.S.C. § 1028A(a)(1).  Accordingly, there are three elements to a charge of aggravated identity theft:

> (1) The defendant knowingly transferred or used a means of identification of another person without legal authority;
>
> (2) The defendant knew the means of identification belonged to a real person; and
>
> (3) The defendant did so in relation to one of the crimes enumerated in 18 U.S.C. § 1028A(c).

*See United States v. Doe*, 842 F.3d 1117, 1119 (9th Cir. 2016); *see also* Ninth Circuit Model Criminal Jury Instructions No. 8.83 (2010).

Rule 29 allows the court to "reserve decision on the motion, proceed with the trial . . . submit the case to the jury, and decide the motion . . . after [the jury] returns a verdict of guilty."  Fed. R. Crim. P. 29(b).  "If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved."  *Id.*  Because Mr. Kvashuk moved for judgment of acquittal at the close of the Government's case in chief and the court reserved its decision on that motion, the court considers the motion

//

solely on the basis of the evidence presented in the Government's case in chief. *See* Fed. R. Crim. P. 29(b).

**B.      Merits of Mr. Kvashuk's Motion**

Mr. Kvashuk does not argue that the Government failed to prove that Mr. Kvashuk used the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test account usernames and passwords to obtain millions of dollars of digital gift cards from Microsoft. (*See* MTD at 2-6.) Rather, Mr. Kvashuk's principal argument in his pretrial motion to dismiss and in oral argument on the current motion is that that the usernames and passwords he used are not a "means of identification" of a real person, as that term is used in 18 U.S.C. § 1028A, and, as such, his use of those usernames and passwords cannot sustain a charge of aggravated identity theft. (*See* MTD at 2-6.)

The court disagrees. "Means of identification" is defined broadly as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual . . . ." 18 U.S.C. § 1028(d)(7). The "means of identification" at issue must belong to a real person. *Doe*, 842 F.3d at 1119. Use of usernames and passwords that identify specific individuals can constitute a means of identification sufficient to sustain a conviction for aggravated identity theft. *See, e.g.*, *United States v. Barrington*, 648 F.3d 1178, 1193 (11th Cir. 2011) (holding that use of "usernames and passwords" associated with online accounts of university employees was sufficient to support a conviction for aggravated identity theft). Here, when the evidence presented in the Government's case in chief is viewed in the light most favorable to the Government, a rational trier of fact could have found that Mr. Kvashuk used a means of identification of

real persons—A.C. and Z.J. M.W., A.C., and Z.J. all testified that UST members created their own test accounts and the passwords associated with those accounts. A.C. and Z.J. testified that the accounts at issue belonged to them and they did not share their test accounts and passwords. M.W. testified that UST members had to provide Microsoft with their account information in order to obtain TIP cards for the test account and get the account whitelisted. Based on this testimony, a rational trier of fact could find that the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test accounts and the passwords associated with those accounts constitute a "name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." *See* 18 U.S.C. § 1028(d)(7).

      Mr. Kvashuk's argument that the Government's evidence established only that the test accounts were "tools" that testers used as part of their jobs does not detract from the fact that test accounts qualify as a means of identification under 18 U.S.C. § 1028(d)(7). Because test accounts were created by and associated with individual UST members, those accounts are "means of identification" of a real person. Indeed, the testimony showed that when Microsoft learned that someone obtained digital gift cards using the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test accounts, Microsoft identified A.C. and Z.J. as the owners of those accounts and interviewed them about their use of those accounts. That is compelling evidence that those test accounts constitute a means of identification of A.C. and Z.J. The fact that UST members also had other means of identification at Microsoft—such as their Microsoft-assigned work email addresses that UST members would use for things like human resources issues, inner-

office communications, or vacation requests—is irrelevant. Although A.C. and Z.J.'s Microsoft-assigned work email addresses would likely also constitute a means of identification under 18 U.S.C. § 1028(d)(7), the Government did not charge Mr. Kvashuk with using those email addresses in furtherance of access device fraud or access to a protected computer in furtherance of fraud. The Government charged Mr. Kvashuk with using A.C. and Z.J.'s test accounts and test account passwords. (*See* 2d Sup. Indictment ¶ 33.) Based on the evidence presented at trial, viewed in the light most favorable to the Government, a rational trier of fact could conclude that the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test accounts constituted a means of identification of real persons.

The court also rejects Mr. Kvashuk's argument that the Government did not prove that Mr. Kvashuk used the means of identification of "another person" because he had A.C. and Z.J.'s consent to use the mstest_swfe2eauto@outlook.com and mstest_zabeerj2@outlook.com test accounts.[2] (*See* MTD at 6.) In his pretrial motion to dismiss, Mr. Kvashuk cited a Seventh Circuit decision in support of his argument that the term "another person," as used in 18 U.S.C. § 1028A, means a person who did not consent to the use of his or her means of identification, not simply "a person other than the defendant." (*See* MTD at 6 (citing *United States v. Spears*, 729 F.3d 753 (7th Cir.

---

[2] Although Mr. Kvashuk's counsel did not raise this argument at oral argument on Mr. Kvashuk's motion for judgment of acquittal, Mr. Kvashuk's counsel adopted the briefing on the pretrial motion to dismiss as part of his motion for judgment of acquittal. Because Mr. Kvashuk raised the "another person" argument in his pretrial motion to dismiss (*see* MTD at 6), the court considers it here under the Rule 29 framework.

2013).) The Ninth Circuit recently rejected *Spears* and confirmed that the term "another person," as used in 18 U.S.C. § 1028A, means a "person other than the defendant" and does not require that the defendant used the identification without consent. *See Gagarin*, 2020 WL 727761 at *5-6; *see also United States v. Osuna-Alvarez*, 788 F.3d 1183, 1185-86 (9th Cir. 2015) ("[R]egardless of whether the means of identification was stolen or obtained with the knowledge and consent of its owner, the illegal use of the means of identification alone violates [18 U.S.C.] § 1028A."). Thus, Mr. Kvashuk's argument runs afoul of controlling law in this Circuit. *Gagarin* confirms that the Government had to show that Mr. Kvashuk used the means of identification of a person other than himself, and a rational trier of fact could conclude that the Government proved that Mr. Kvashuk's use of A.C. and Z.J.'s test accounts established that element of aggravated identity theft.[3]

In sum, the court finds that a rational trier of fact could conclude after the Government's case in chief that Mr. Kvashuk used the "means of identification" of "another person" as those terms are used in 18 U.S.C. § 1028A. Accordingly, the court DENIES Mr. Kvashuk's motion for judgment of acquittal.

//

//

---

[3] Although the law in the Ninth Circuit does not require that the Government prove Mr. Kvashuk used A.C. and Z.J.'s accounts without consent, *see Gagarin*, 2020 WL 727761 at *5-6, the court notes that A.C. and Z.J. both testified that they did not give Mr. Kvashuk permission to access their test accounts. Thus, the evidence at trial showed that Mr. Kvashuk did not have consent to use A.C. and Z.J.'s accounts.

## IV. CONCLUSION

For the reasons set forth above, Mr. Kvashuk's oral motion for judgment of acquittal (*see* Dkt. # 125) is DENIED.

Dated this 6th day of March, 2020.

JAMES L. ROBART
United States District Judge