UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VOLODYMYR KVASHUK,<br><br>Defendant. | CASE NO. CR19-0143JLR<br><br>ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL |

## I. INTRODUCTION

Before the court is Defendant Volodymyr Kvashuk's (1) motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 (MFA (Dkt. # 161)) and (2) motion for a new trial under Federal Rule of Criminal Procedure 33 (MNT (Dkt. # 163)). Plaintiff United States of America ("the Government") opposes both motions. (*See* MFA Resp. (Dkt. # 166); MNT Resp. (Dkt. # 165).) The court has considered the motions, the relevant portions of the record, and the applicable law. Being fully advised, the court

//

DENIES Mr. Kvashuk's motion for judgment of acquittal and DENIES Mr. Kvashuk's motion for a new trial.

## II. BACKGROUND

**A.  The Indictment and Mr. Kvashuk's Trial**

The Government charged Mr. Kvashuk with 18 counts based on Mr. Kvashuk's alleged scheme to defraud Microsoft Corporation ("Microsoft"), his former employer, of more than $10 million in digital currency. (*See generally* 2d Sup. Indictment (Dkt. # 61).) Specifically, the Government charged Mr. Kvashuk with one count of access device fraud in violation of 18 U.S.C. § 1029, one count of access to a protected computer in furtherance of fraud in violation of 18 U.S.C. § 1030(a)(4), one count of mail fraud in violation of 18 U.S.C. § 1341, five counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of making and subscribing to a false tax return in violation of 26 U.S.C. § 7206, six counts of money laundering in violation of 18 U.S.C. § 1957, and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (*See id.* ¶¶ 1-33.) Mr. Kvashuk's trial began on February 18, 2020. (*See* 2/18/20 Minute Entry (Dkt. # 96).) On February 25, 2020, the jury convicted Mr. Kvashuk on all 18 counts. (*See* Jury Verdict (Dkt. # 133).)

**B.  Juror Number 12**

During *voir dire*, the court asked the potential jurors if they had ties to Microsoft. Juror Number 12 (whose number during jury selection was 41) reported that he worked as a Microsoft contractor "between 2011 and 2018 on a variety of different project[s]," and that Microsoft was the "primary business partner" of the company he currently

worked for. (*See* Resp., Ex. A ("2/18/20 Tr.") at 2:3-8.) Juror Number 12 agreed that he knew Microsoft "well." (*Id.* at 2:9-10.) Juror Number 12 added that he had a "very wide and very shallow knowledge of almost any computer subject you can imagine." (*Id.* at 3:3-9.) The court asked Juror Number 12 if he could be fair, and Juror Number 12 answered, "I can render an impartial verdict, Your Honor." (*Id.* at 2:11-17.) Mr. Kvashuk's counsel did not ask Juror Number 12 any questions during *voir dire*.

During the second day of trial, Mr. Kvashuk's former supervisor at Microsoft testified about the operations of Universal Store Team ("UST") that Mr. Kvashuk worked on while employed at Microsoft, the testing program that Mr. Kvashuk allegedly used to steal digital gift cards from Microsoft, and Mr. Kvashuk's role and responsibilities at Microsoft. After that testimony, Juror Number 12 sent a note to the court stating that:

> While during jury selection I mentioned that I had worked several contract positions at Microsoft during the past 10 years[,] I gave no further details. While I do not believe it to be a problem as I did not directly work with the people and teams being [discussed], I did work in close proximity. Close enough that I did Q and A work on different areas of the Universal Storefront that is being discussed. I would be happy to provide more details if necessary.

(Juror Note (Dkt. # 123).)

After receiving the note from Juror Number 12, the court and the lawyers questioned Juror Number 12 outside the presence of the other jurors. (*See* 2/19/20 Min. Entry (Dkt. # 119).) Juror Number 12 stated that he was a member of the "Microsoft content ingestion support team from "April of 2014 until August of 2016[.]" (*See* Resp., Ex. B ("2/19/20 Tr.") at 4:13-5:1.) Juror Number 12 explained that the group Mr. Kvashuk worked for, the UST, "was just starting up when I was leaving." (*See id.* at 5:6-

13.) Juror Number 12 noted that there were 8,000 people in UST and that he did not know Mr. Kvashuk or any of the witnesses. (*See id.* at 4:13-5:5, 5:19-24.) Juror Number 12 explained that Mr. Kvashuk worked on the "user experience," while Juror Number 12 "worked on the exact opposite end," namely the "back end" of the system. (*See id.* at 6:8-21.) Juror Number 12 reaffirmed that he could be "a fair and impartial juror." (*Id.* at 5:25-6:4.)

The Court sent Juror Number 12 back to the jury room and heard argument from the parties on the question of whether Juror Number 12 should continue to serve on the jury. (*See id.* at 7:3-10:14.) The Government asked the court to allow Juror Number 12 to stay on the jury, but Mr. Kvashuk asked the Court to remove Juror Number 12 and replace him with the first alternate. (*See id.* at 7:3-24.) Mr. Kvashuk's counsel did not challenge Juror Number 12's ability to be fair. Instead, Mr. Kvashuk's counsel argued that he would have used a peremptory challenge on Juror Number 12 had he known during *voir dire* that Juror Number 12 was familiar with the UST. (*See id.* at 7:7-24, 11:8-15.)

The court ruled that Juror Number 12 would remain on the jury. (*See id.* at 11:16-12:8.) The court concluded that there was no basis to remove Juror Number 12 for cause because Juror Number 12 repeatedly confirmed that he could be fair and impartial. (*See id.* at 11:16-22.) The court also rejected Mr. Kvashuk's argument that Mr. Kvashuk should be entitled to use an unexercised peremptory challenge after the jury had been accepted and the case had been empaneled. (*See id.* at 11:23-12:8.)

//

Mr. Kvashuk now argues that the court's refusal to remove Juror Number 12 from the jury during trial merits a new trial. (*See* MNT at 4-7.) The court addresses the merits of this argument in detail, below. *See infra* § III.B.1

**C.     Mr. Kvashuk's Asylum Claim**

Prior to trial, the United States moved *in limine* to exclude evidence of Mr. Kvashuk's immigration status and pending asylum claim. (MIL (Dkt. # 54).) Mr. Kvashuk is from Ukraine, he has no permanent status in the United States, and he is currently seeking asylum in the United States due to alleged threats that Mr. Kvashuk and his family received while in Ukraine. (MIL at 1-2; MIL Resp. (Dkt. # 59) at 2-3.) The Government argued that Mr. Kvashuk's asylum status is irrelevant to this trial and would be highly prejudicial and a waste of time if admitted. (MIL at 2-5.) Mr. Kvashuk argued that the Government's allegations that Mr. Kvashuk concealed his income using cryptocurrency as part of his scheme to defraud Microsoft rendered his asylum claim relevant. (MIL Resp. at 2.) Mr. Kvashuk claimed that he may seek to testify that he used cryptocurrency because he was afraid that the Ukrainian government would retaliate against him due to his asylum claim and believed that cryptocurrency would be harder for the Ukrainian government to detect. (*See id.* at 2-3.)

At a pretrial conference on December 16, 2019, the court granted the motion *in limine* in part and denied it in part. (*See* 12/16/19 Min. Entry (Dkt. # 75).) The court permitted Mr. Kvashuk to testify that he was from Ukraine and stated that it would entertain an offer of proof that Mr. Kvashuk "transferred or received crypto currency []  on the basis of his desire to conceal the transfers from the Ukrainian government."

(Resp., Ex. C ("12/16/19 Tr.") at 12:10-25.) The court, however, prohibited Mr. Kvashuk from discussing his immigration status in the United States or his status as an asylum seeker." (*See id.*)

At trial, the Government offered testimony from multiple Internal Revenue Service ("IRS") agents regarding Mr. Kvashuk's use of cryptocurrency and the connection between cryptocurrency and Mr. Kvashuk's scheme to defraud Microsoft. The Government also offered records from Mr. Kvashuk's Fidelity Investments, Inc. ("Fidelity") account in support of its wire fraud and money laundering charges. One of those Fidelity account documents, Exhibit 411, included evidence identifying Mr. Kvashuk as a person who was not a United States citizen or a permanent resident. (*See* Tr. Ex. 411 (Dkt. # 155 (sealed)) at 1, 8-12.) Mr. Kvashuk's counsel argued that this document opened the door to evidence of Mr. Kvashuk's asylum claim, specifically in regard to a redaction that the Government had used on Exhibit 202. (*See* Tr. Ex. 202 (Dkt. # 141-4) at 3-4.) Exhibit 202 includes an email Mr. Kvashuk sent to his tax preparer in which Mr. Kvashuk claimed that he received cryptocurrency as a gift from his father for security reasons due to his pending asylum claim. (*See id.*) The Government redacted the language about Mr. Kvashuk's asylum claim pursuant to the court's ruling on the motion *in limine*, and Mr. Kvashuk asked that the redaction be removed in light of the Government opening the door to evidence of Mr. Kvashuk's immigration status via Exhibit 411. (*See* Resp. at 5-6.) After reviewing Exhibits 202 and 411 and hearing argument from the parties, the court concluded that the Government had not opened the

//

door and reaffirmed its motion *in limine* ruling that Mr. Kvashuk could not testify about his asylum claim.

Mr. Kvashuk testified in his own defense at trial. Mr. Kvashuk did not testify that he received cryptocurrency as a gift from his father or that he used cryptocurrency to conceal currency from the Ukrainian government. Instead, he acknowledged he received cryptocurrency from his sale of Microsoft digital gift cards and that he lied to his tax preparer. His central defense to the Government's charges was that he was obtaining digital gift cards from Microsoft and selling them to Microsoft online store users as part of a program that he was developing for Microsoft's benefit.

Mr. Kvashuk now argues that the court erred in its *in limine* and in court rulings on the admissibility of his asylum status. (*See* MNT at 7-10.)

### III.  ANALYSIS

Mr. Kvashuk's motion for judgment of acquittal seeks acquittal on all counts in the indictment except for the two counts of aggravated identity theft.[1] (*See* MFA at 1.) Mr. Kvashuk's motion for a new trial rests on two alleged errors by the court, which Mr. Kvashuk alleges violate his Fifth and Sixth Amendment rights: (1) the court's failure to exclude Juror 12 from the jury after Juror 12 disclosed that he had worked on a project involving the Microsoft online store; and (2) the court's decision to grant the

//

---

[1] Mr. Kvashuk made an oral motion for judgment of acquittal on the two counts of aggravated identity theft after the close of the Government's case in chief. (*See* 2/21/20 Min. Entry (Dkt. # 125).) The court took that motion under advisement and denied the motion after the close of trial. (*See* 3/6/20 Order (Dkt. # 160).)

Government's motion *in limine* to exclude reference to Mr. Kvashuk's asylum status during trial. (*See* MNT at 2-10.) The court addresses each motion in turn.

**A.     Motion for Judgment of Acquittal**

Pursuant to Rule 29, upon a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "In determining whether evidence was insufficient to sustain a conviction, we consider whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Gagarin*, 950 F.3d 596, 602 (9th Cir. 2020) (quoting *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (*en banc*)).

Mr. Kvashuk argues he must be acquitted of Access Device Fraud, Access to a Protected Computer in Furtherance of Fraud, Mail Fraud, and Wire Fraud—as charged in Counts 1-8 of the indictment. (*See* 2d Sup. Indictment at 1-9). Mr. Kvashuk contends that the Government did not prove beyond a reasonable doubt that Mr. Kvashuk acted with intent to defraud, which is a required element of each of those charges. (*See* MFA at 5.) Mr. Kvashuk further argues that if the court acquits him of Mail Fraud and Wire Fraud as charged in Counts 3-8 based on insufficient evidence of intent to defraud, then the Money Laundering charges in Counts 11-16 also fail because the Money Laundering counts are dependent on Counts 3-8. (*See id.* at 6; *see also* 2d. Sup. Indictment at 10-11.) Finally, for the two counts of Making and Subscribing to a False Tax Return—Counts 9 and 10 (*see id.* at 9-10)—Mr. Kvashuk offers a similar argument that the Government

failed to prove that Mr. Kvashuk (1) knew that federal tax law imposed a duty on him and (2) intentionally and voluntarily violated that duty. (*See* MFA at 6.)

The critical failure of Mr. Kvashuk's motion for judgment of acquittal is that it disregards the appropriate standard for Rule 29 motions. Mr. Kvashuk's sole evidence in support of his motion is his own testimony. (*See id.* at 5-6.) Mr. Kvashuk notes that he testified that he did not have intent to defraud, that he did not understand his obligations under federal tax law, and that he did not intend to disregard tax law. (*See id.*) Mr. Kvashuk argues that this creates reasonable doubt that mandates his acquittal. (*See id.* at 5.) That argument is woefully inadequate. Mr. Kvashuk essentially asks the court to credit Mr. Kvashuk's self-serving testimony while ignoring the mountain of evidence of Mr. Kvashuk's unlawful scheme and his subsequent money laundering and tax evasion that the Government presented during its case in chief. The court is not entitled to usurp the jury's function to weigh evidence and determine witness credibility on a Rule 29 motion. *See United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977) (citation and internal quotation omitted) ("In ruling on a Rule 29(c) motion, a district court must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts."). When the totality of the evidence presented at trial is viewed in the light most favorable to the Government, the court finds that there was an abundance of evidence presented on which a rational trier of fact could have found that Mr. Kvashuk committed the crimes charged beyond a reasonable doubt. Accordingly, Mr. Kvashuk's motion for judgment of acquittal is DENIED.

## B. Motion for New Trial

Pursuant to Rule 33(a), a court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal. *United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992); *see also United States v. Morel-Pineda*, No. CR18-142 RSM, 2019 WL 2269819, at *2 (W.D. Wash. May 28, 2019) ("A motion for a new trial is addressed to the sound discretion of the trial court." (quoting *Evalt v. United States*, 382 F.2d 424, 428 (9th Cir. 1967)). On a motion for a new trial, "[t]he court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (citing *Alston*, 974 F.2d at 1211). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

### 1. Juror Number 12

Mr. Kvashuk argues that a new trial is warranted in this matter because the court refused to remove Juror Number 12 from the jury during trial. (*See* MNT at 4-7.) Notably, Mr. Kvashuk's argument as to why Juror Number 12 should have been dismissed appears to have shifted since the court first addressed this issue at trial. At trial, the court confirmed that Mr. Kvashuk was "not challenging [Juror Number 12] in

terms of his ability to be fair, but rather . . . the fact that his prior association with the store didn't come out in *voir dire*, and had it done so [Mr. Kvashuk] would have exercised one of [his] peremptory challenges to remove [Juror Number 12]." (*See* 2/19/20 Tr. at 11:8-15.) In the current motion, however, Mr. Kvashuk argues that Juror Number 12 possessed extrinsic evidence relevant to the case that rendered him unable to be impartial. (*See* MNT at 5-7.)

Nothing in Mr. Kvashuk's motion persuades the court that it should revise its in-court ruling on Juror Number 12. Even where new information about a juror is revealed after jury selection, peremptory challenges do not survive the jury selection process. *See Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004) ("A trial court . . . may not remove a juror to accommodate the prosecutions desire to exercise a peremptory challenge after a jury has been impaneled."). Juror Number 12 disclosed that he had a close working relationship with Microsoft during *voir dire*. (*See* ("2/18/20 Tr.") at 2:3-3:9.) Mr. Kvashuk's failure to explore that relationship during *voir dire* is not grounds to allow him to exercise a peremptory challenge after the trial had already begun. *McDonough Power Equip. Inc. v. Greenwood*, 464 U.S. 548, 555 (1984) ("A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination.").

The court also rejects Mr. Kvashuk's new argument that Juror Number 12 was biased. To obtain a new trial based on previously undiscovered juror bias, "a party must

first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556; *see also Sanders*, 357 F.3d at 949. "To disqualify a juror for cause requires a showing of either *actual* or *implied* bias—that is . . . bias in fact or bias conclusively presumed as a matter of law." *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000) (citations and internal quotations omitted). Actual bias is, in essence, "'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Id.* at 1112 (citations omitted). Implied bias is found in only "extraordinary cases" based on all the relevant circumstances. *Dyer v. Calderon*, 151 F.3d 970, 981 (9th Cir. 1998). "Unlike the inquiry for actual bias, in which we examine the juror's answers on *voir dire* for evidence that she was in fact partial, the issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced." *Gonzalez*, 214 F.3d at 1112.

The court concludes that Mr. Kvashuk's challenge to the court's decision to keep Juror Number 12 on the jury fails because Mr. Kvashuk has not shown that Juror Number 12 answered any questions dishonestly during *voir dire*. To the contrary, Juror Number 12 candidly disclosed that he knew Microsoft "well," that he had worked as a Microsoft contractor "between 2011 and 2018," that he had worked on "a variety of different project[s]" for Microsoft, that Microsoft was the "primary business partner" of the company he currently worked for, and that he had "very wide and very shallow knowledge of almost any computer subject you can imagine." (*See* 2/18/20 Tr. at 2:3-3:9.) Although Juror Number 12 did not disclose that he was a UST member until after

*voir dire*, he was not required to intuit that his stint with the UST was relevant to the trial at hand based on the limited information available to him at that time.[2] *See United States v. Roberson*, 282 F. App'x 582, 584 (9th Cir. 2008) ("Where a juror reasonably interprets and truthfully answers the direct questions posed to him, a defendant cannot meet the first prong of *McDonough* by arguing that the juror should have intuited the unasked question.") (citations and internal quotations omitted).

Moreover, even if Mr. Kvashuk could show that Juror Number 12 failed to answer a material question honestly on *voir dire*, he has not shown that Juror Number 12 had actual or implied bias that required his removal from the jury for cause. Juror Number 12 repeatedly said that he could be impartial. (*See* 2/18/20 Tr. at 2:11-17; 2/19/20 Tr. at 5:25-6:4.).) He was one of roughly 8,000 UST members, he worked on a different part of the UST than Mr. Kvashuk, he did not know Mr. Kvashuk or any of the witnesses, and he did not participate in the testing program at the heart of Mr. Kvashuk's case. (*See id.* at 4:13-6:21.) Thus, the court concludes that there is no evidence that Juror Number 12 had actual bias or implied bias, which provides additional grounds to reject Mr. Kvashuk's motion for a new trial on the basis of the court's decision not to exclude Juror Number 12 from the jury.

//

//

---

[2] Moreover, Juror Number 12 disclosed his relationship with the UST almost immediately after the testimony made it clear that the UST was relevant to the trial. (*See* Juror Note.)

### 2. Asylum Status

Mr. Kvashuk's second ground for a new trial is based on the court's exclusion of evidence related to Mr. Kvashuk's pending asylum claim, which Mr. Kvashuk claims "infringed upon Mr. Kvashuk's defense." (*See* MNT at 8.) In response to the Government's motion *in limine*, Mr. Kvashuk argued that his asylum claim was relevant to explain to the jury that he was using cryptocurrency to hide assets from the Ukrainian government. (MIL Resp. at 2-3.) At trial, Mr. Kvashuk argued that he needed to introduce his asylum claim to explain why he told his tax preparer that the cryptocurrency he had received was a gift from his father. Now, in the current motion, Mr. Kvashuk moves the goal posts and argues that his asylum claim was relevant to his defense because "[a]s an asylum seeker, Mr. Kvashuk certainly would not jeopardize his opportunity to remain in the United States and risk removal to Ukraine." (MNT at 9.)

The court rejects Mr. Kvashuk's latest attempt to articulate grounds for admitting his asylum status. The court reiterates its prior conclusions that (1) Mr. Kvashuk's asylum application is not relevant to the issues presented at trial; and (2) even if that evidence was relevant, any relevance would be substantially outweighed by the danger of unfair prejudice caused by informing the jury that Mr. Kvashuk could suffer immigration consequences if convicted of the charges. *See United States v. Bustamante-Martinez*, No. 5:15-CR-103-FL-1, 2016 WL 5874986, at *1 (E.D.N.C. Oct. 7, 2016) (noting that even if evidence of defendant's attempt to get legal status were relevant, the evidence should be excluded under Rule 403 because of the danger that the jury would consider "any potential immigration consequences related to a guilty verdict"); *Point Ruston, LLC v.*

*Pac. Nw. Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, No. C09-5232BHS, 2010 WL 3766503, at *1 (W.D. Wash. Sept. 22, 2010) (excluding evidence regarding defendants' immigration status as irrelevant and prejudicial). Thus, evidence about Mr. Kvashuk's asylum status is inadmissible under Federal Rules of Evidence 402 and 403. *See* Fed. R. Evid. 402; Fed. R. Evid. 403.

The court also rejects Mr. Kvashuk's argument that the Government opened the door to evidence about Mr. Kvashuk's asylum status by introducing Exhibit 411 into evidence. Although Exhibit 411 stated that Mr. Kvashuk was not a United States citizen or a permanent resident, that document did not reference Mr. Kvashuk's asylum claim. (*See* Tr. Ex. 411 at 1, 8-12.) Accordingly, the Government did not open the door to evidence about Mr. Kvashuk's asylum status.

3. <u>Conclusion</u>

Because the court did not err in leaving Juror Number 12 on the jury or by excluding evidence of Mr. Kvashuk's asylum claim, the court finds that "the interest of justice" does not require that Mr. Kvashuk be granted a new trial. *See* Fed. R. Crim. P. 33(a); *see also Kellington*, 217 F.3d at 1097 (noting that a court may not grant a motion for a new trial absent evidence that "a serious miscarriage of justice may have occurred" during trial). Accordingly, the court DENIES Mr. Kvashuk's motion for a new trial.

//

//

//

//

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Mr. Kvashuk's motion for judgment of acquittal (Dkt. # 161) and DENIES Mr. Kvashuk's motion for a new trial (Dkt. # 163).

Dated this 14th day of April, 2020.

JAMES L. ROBART
United States District Judge