UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>  v.<br><br>VOLODYMYR KVASHUK,<br><br>  Defendant. | CASE NO. CR19-0143JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court are *pro se* Defendant Volodymyr Kvashuk's motion and supplemental motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). (Mot. (Dkt. # 201); Supp. Mot. (Dkt. # 223)[1]; Mem. (Dkt. # 202); Reply (Dkt. # 221); *see*

---

[1] Mr. Kvashuk's supplemental motion for compassionate release merely adds a discussion of a newly discovered medical issue that Mr. Kvashuk asks the court to consider in conjunction with his original motion for compassionate release. (*See* Supp. Mot. at 1; 6/6/23 Order (Dkt. # 228) at 2-3.) Accordingly, the court refers to Mr. Kvashuk's original and supplemental motions collectively as Mr. Kvashuk's motion for compassionate release throughout this order.

ORDER - 1

*also* Mem. Exs. Pt. 1 (Dkt. # 204); Mem. Exs. Pt. 2 (Dkt. # 205 (sealed)); Mem. Exs. Pt. 3 (Dkt. # 226 (sealed)).[2]) Plaintiff the United States of America ("the Government") opposes Mr. Kvashuk's motion. (Resp. (Dkt. # 214).) The court has considered Mr. Kvashuk's motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES Mr. Kvashuk's motion.

## II. BACKGROUND

Mr. Kvashuk is a 29-year-old inmate who is currently detained at Federal Correctional Institution ("FCI") Berlin. (*See* Presentence Investigation Report ("PSR") (Dkt. # 169 (sealed)) at 4; Comp. Release Mem. (Dkt. # 209 (sealed)) at 1.) He is in prison for using his position as a software engineer at Microsoft Corporation to steal $10.1 million worth of digital gift cards in 2017 and 2018. (*See generally* PSR at 5-7.) A jury convicted Mr. Kvashuk of one count of access device fraud, one count of access to a protected computer in furtherance of fraud, one count of mail fraud, five counts of wire fraud, two counts of making and subscribing to a false tax return, six counts of money laundering, and two counts of aggravated identity theft. (*See generally* Verdict (Dkt. # 133).) On November 9, 2020, the court sentenced Mr. Kvashuk to 108 months of imprisonment followed by three years of supervised release. (*See* 11/9/20 Minute Entry (Dkt. # 174); Judgment (Dkt. # 175).) He was remanded into custody following his

//

---

[2] The court cites to the page numbers in the CM/ECF header when referencing the parties' exhibits.

ORDER - 2

sentencing hearing, and his projected release date is May 5, 2026.  (*See* 11/9/20 Minute Entry; Comp. Release Mem.)

### III. ANALYSIS

Mr. Kvashuk now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (*See generally* Mot.; Supp. Mot.)  The court begins by setting forth the standard of review before turning to its analysis of Mr. Kvashuk's motion.

**A.     Standard for Compassionate Release**

A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35. *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United States*, 506 U.S. 817, 824-25 (2010).  18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, "allows certain inmates to seek a form of sentence modification," commonly referred to as compassionate release, "by filing motions to that effect with the district court."  *See United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022); *Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020). Under § 3582(c)(1), courts have the authority to reduce a sentence upon the motion of an inmate if three conditions are met:  (1) the inmate has either exhausted their administrative appeal rights of the Bureau of Prisons' ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with "applicable policy statements" issued by the United States Sentencing Commission.  *See*

18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley*, 2020 WL 1819838, at *5. If the inmate meets all three conditions, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding whether compassionate release is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A).

When presented with a defendant-filed, rather than BOP-filed, motion for compassionate release, the Ninth Circuit has held that "district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (concluding that the Sentencing Commission's current policy statement, which limits "extraordinary and compelling reasons" to four categories, does not apply to defendant-filed motions for compassionate release (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(D))); *see also United States v. Van Cleave*, No. CR03-0247RSL, 2020 WL 2800769, at *5 (W.D. Wash. May 29, 2020) (referring to the policy statement as "persuasive, but not binding"); *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022) (stating that district court has "discretion to consider a combination of 'any' factors particular to the case at hand" when determining whether extraordinary and compelling circumstances exist (quoting *Aruda*, 993 F.3d at 802)).

**B.      Exhaustion of Administrative Remedies**

Before considering the merits of Mr. Kvashuk's motion, the court must determine whether he has met the statutory exhaustion requirement for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). On March 13, 2022, Mr. Kvashuk submitted a request for compassionate release to the Warden at FCI Berlin, and the Warden denied the request on

May 20, 2022. (*See* Mem. Exs. Pt. 1 at 4-5.[3]) Mr. Kvashuk then filed this motion on April 14, 2023—more than 30 days after he submitted his requests to the warden. (*See generally* Mot.) The court finds that the statutorily required 30-day period has expired, and Mr. Kvashuk's motion is properly before the court.[4]

C. **Extraordinary and Compelling Circumstances**

Mr. Kvashuk bears the burden of establishing that "extraordinary and compelling reasons" exist that justify compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Suryan*, No. CR19-0082RAJ, 2021 WL 3510423, at *2 (W.D. Wash. Aug. 10, 2021). Mr. Kvashuk argues that the following factors justify compassionate release: (1) his conditions of confinement at FCI Berlin; (2) his medical conditions place him at greater risk of developing serious complications from COVID-19; (3) the BOP is unable to provide him the medical care he requires; and (4) his post-sentence rehabilitation. (*See* Mot. at 1-2; Mem. at 2-5; Reply at 1-3; Supp. Mot. at 1.) For the reasons set forth below, the court concludes that Mr. Kvashuk has not established "extraordinary and compelling reasons" justifying his release.

//

//

---

[3] Mr. Kvashuk also made an administrative request for compassionate release to the warden at FCI Berlin on June 8, 2022, which appears to have been denied on June 29, 2022. (*See* Mem. Exs. Pt. 1 at 6-7; *see also id.* at 8-9 (providing evidence that Mr. Kvashuk appealed the denials, but lacking proof of any response to those appeals).)

[4] The Government agrees that Mr. Kvashuk complied with § 3582(c)(1)(A)'s exhaustion requirement. (*See* Resp. at 2, 4 n.1.)

ORDER - 5

1. Conditions of Confinement at FCI Berlin

Mr. Kvashuk argues that COVID-19's impact on his conditions of confinement warrants a reduction in sentence. (*See* Mem. at 4; Kvashuk Aff. (Dkt. # 224) at 1.) The court need not reiterate the widely known information regarding the symptoms of COVID-19, the devastating global impact of the virus, and the unprecedented challenges COVID-19 created for federal prisons. *See United States v. Rollness*, No. CR06-0041RSL, 2021 WL 4476920, at *4 (W.D. Wash. Sept. 30, 2021) (discussing COVID-19's impact on prisons). Moreover, the court does not discount the dangers associated with COVID-19 nor the difficulties prisons face in preventing and containing outbreaks.

However, "general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release." *United States v. Bolden*, No. CR16-0320RSM, 2020 WL 4286820, at *7 (W.D. Wash. July 27, 2020); *United States v. Veletanlic*, No. CR18-0162JLR, 2021 WL 5205706, at *4 (W.D. Wash. Nov. 9, 2021) (rejecting argument that the general "conditions at [defendant's prison] warrant release, including the number of COVID-19 infections and deaths, the lax implementation and enforcement of COVID-19 prevention policies, the impossibility of maintaining social distancing, and the unhygienic living situations"); *United States v. Ruelas-Payan*, No. CR17-0229JLR, 2021 WL 5847587, at *3 (W.D. Wash. Dec. 9, 2021) (rejecting similar arguments). "Extraordinary and compelling" circumstances are not established by "the mere elevated risk of contracting a pandemic virus in prison, even if such a higher risk exists." *Riley*, 2020 WL 1819838, at

*7. Accordingly, the court finds that Mr. Kvashuk's conditions of confinement do not constitute "extraordinary and compelling" circumstances warranting compassionate release.

### 2. Risk of Developing Severe Complications From COVID-19

Mr. Kvashuk argues that his underlying medical conditions make him more susceptible to suffering severe complications from COVID-19 and amount to "extraordinary and compelling reasons" warranting his release. (*See* Mem. at 2-3; Mot. at 1.) Specifically, Mr. Kvashuk claims that he is overweight and suffers from depression, anxiety, post-traumatic stress disorder ("PTSD"), hypertension, asthma, "Left Posterior Fascicular Block" ("LPFB"), "Right Bundle Branch Block" ("RBBB"), and chronic obstructive pulmonary disease ("COPD"). (Mem. at 2-3; Supp. Mot. at 1.)

To begin, BOP medical records do not show that Mr. Kvashuk has been diagnosed with depression, anxiety, or PTSD, as he claims in his motion. Rather, the records show that BOP medical providers have not diagnosed Mr. Kvashuk with these conditions and that some of these conditions are simply symptoms that he self-reported at some medical appointments but did not report at others.[5] (*See* Mem. Exs. Pt. 2 at 5 (stating that Mr.

---

[5] To establish the existence of these conditions, Mr. Kvashuk cites to a "Needs Reassessment" worksheet and a psychology services intake screening. (Mem. at 2 (citing Mem. Exs. Pt. 1 at 14); Reply at 1 (citing Mem. Exs. Pt. 3 at 19).) The worksheet indicates that Mr. Kvashuk does not need access to mental health programming but needs trauma programming. (Mem. Exs. Pt. 1 at 14.) While this worksheet indicates that Mr. Kvashuk was exposed to trauma as a child, it does not establish an independent diagnosis for PTSD. *See First Step Act: Needs Assessment*, BOP (June 2021), https://www.bop.gov/inmates/fsa/docs/fsa_needs_assessment_overview.pdf (describing the needs assessment). Additionally, the psychology services intake screening states that Mr. Kvashuk reported a history of "Bipolar Disorder, depression, panic attacks, and PTSD and nightmare," but it does not contain an independent diagnosis of such conditions. (*See* Mem. Exs. Pt. 3 at 19.)

ORDER - 7

Kvashuk reported that his court interactions were causing him some anxiety); Medical Records (Dkt. # 215 (sealed)) at 9 (same); *id.* at 2, 5, 14-15 (noting that Mr. Kvashuk did not appear distressed, among other things); *id.* at 26 (noting that Mr. Kvashuk's mental health appeared normal, he did not have any mental health complaints, and he did not require mental health treatment); Mem. Exs. Pt. 3 at 19 (stating that Mr. Kvashuk "presented as psychologically stable with mental status generally within normal limits").[6])

      Mr. Kvashuk's medical records do, however, confirm that he is overweight, has an LPFB and an "incomplete RBBB," and suffers from hypertension, asthma, and COPD. (*See* Mem. Exs. Pt. 2 at 2 (stating Mr. Kvashuk has body mass index ("BMI") of 26.9); Medical Records at 2, 6, 9-10, 12, 19-20, 22-23 (documenting Mr. Kvashuk's hypertension, asthma, and COPD); *see also id.* at 3, 10, 19, 22-23, 37 (documenting the medication that Mr. Kvashuk is taking for those conditions); Mem. Exs. Pt. 3 at 52, 61 (stating that Mr. Kvashuk has an LPFB and an incomplete RBBB).) The CDC has identified asthma and COPD as conditions that may make a person more likely to suffer severe complications from COVID-19. *See People with Certain Medical Conditions*, CDC (May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC also recognizes that individuals who are overweight or obese may be more likely to get severely ill from

---

[6] Even if Mr. Kvashuk had substantiated the above-mentioned conditions, the court's conclusion (*see infra*) would remain unchanged because Mr. Kvashuk is young and vaccinated against COVID-19.

COVID-19.  *See id.*; *see also Rollness*, 2021 WL 4476920, at *5 (defining overweight as a BMI between 25 and 30 and stating that the "risk of severe illness from COVID-19 increases sharply with higher BMI" (quoting *People with Certain Medical Conditions*, *supra*)).  Although the CDC lists hypertension as a condition that could "possibly" make a person more likely to get severely ill from COVID-19, the most recent CDC findings state that it is "inconclusive" whether hypertension increases the risk of a severe COVID-19 outcome.  *See People with Certain Medical Conditions*, *supra*; *United States v. Kerfoot*, No. CR06-0252TSZ, 2022 WL 990539, at *2 (W.D. Wash. Apr. 1, 2022) (citing *Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, CDC (Feb. 9, 2023), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html).  Finally, because it is unclear whether the CDC considers LPFB and RBBB to be the types of heart conditions that may place an individual at greater risk for getting very sick from COVID-19, the court will err on the side of caution and treat such conditions as potentially placing Mr. Kvashuk at greater risk for COVID-19 complications.  *See People with Certain Medical Conditions*, *supra* (describing a number of heart conditions "such as heart failure, coronary artery disease, [and] cardiomyopathies," but not specifically listing LPFB and RBBB).  Accordingly, the court finds that Mr. Kvashuk suffers from six conditions that potentially place him at greater risk for COVID-19 complications.

   That potential risk, however, is significantly lessened by a number of factors.  First, Mr. Kvashuk is 29 years old.  (PSR at 4.)  The CDC recognizes that "[o]lder adults are at highest risk of getting very sick from COVID-19"; individuals over 65 are 97 times

more likely to die from COVID-19 than people ages 18-29 years old. *See People with Certain Medical Conditions*, *supra*. Second, Mr. Kvashuk has been vaccinated against COVID-19. (Mem. Exs. Pt. 3 at 50; Mem. at 3.) "[D]istrict courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection." *United States v. Smith*, 538 F. Supp. 3d 990, 996 & n.8 (E.D. Cal. 2021) (collecting cases); *see also United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) (collecting cases concluding that the risks posed by COVID-19 are lessened through vaccination); *United States v. Adams*, No. CR14-0181JCC, 2021 WL 2073389, at *1 (W.D. Wash. May 24, 2021) (noting that "[m]any courts have concluded that, [where the defendant has been fully vaccinated], health conditions no longer represent an extraordinary and compelling reason warranting a reduction in sentence"). While no vaccine is 100% effective, CDC studies indicate that Mr. Kvashuk's risk of reinfection is low given his vaccination and, furthermore, that vaccination reduces his risk of severe illness if reinfected.[7] *See, e.g.*, *United States v. Weems*, No. CR15-0089RSL, 2022 WL

---

[7] In his reply, Mr. Kvashuk also argues that he is at greater risk for COVID-19 complications because he is using a corticosteroid inhaler for his asthma and COPD. (Reply at 2.) The CDC states that individuals who develop a weakened immune system from "us[ing] certain types of medicines," "like corticosteroids," "for a long time," may be placed at greater risk of COVID-19 complications, even if vaccinated. *People with Certain Medical Conditions*, *supra*. Mr. Kvashuk, however, has only been using a corticosteroid inhaler since April 21, 2023. (Mem. Exs. Pt. 3 at 54 (noting that a prescription was entered for a Fluticasone/Salmeterol inhaler on that date)). The current record does not lead the court to conclude that the vaccines' efficacy has been drastically reduced with respect to Mr. Kvashuk. *See, e.g.*, *United States v. Casas*, No. 3:10-CR-3045-BTM, 2021 WL 5359363, at *5 (S.D. Cal. Nov. 17, 2021) (stating, with respect to defendant taking immunosuppressive medication, that the court found it "too speculative to conclude that the vaccines Casas has received are not effective in either preventing

17586010, at *6 (W.D. Wash. Dec. 12, 2022) ("Now, almost two years after vaccines first became available, their effectiveness is widely accepted." (citing *COVID-19 Vaccines Are Effective*, CDC (June 29, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html)); *United States v. Stringer*, No. CR18-0157RAJ, 2021 WL 3565430, at *3 (W.D. Wash. Aug. 12, 2021) (stating that the vaccine "substantially reduces the likelihood of Mr. Stringer contracting the virus" and protects against the risk of "developing severe complications . . . should he become infected," even in light of his diabetes and hypertension).

At this time, because Mr. Kvashuk is young and vaccinated (Mem. Exs. Pt. 3 at 50; Mem. at 3), and because there is no evidence that the BOP cannot adequately manage his heart conditions, hypertension, asthma, and COPD (Medical Records at 2-3, 6, 9-10, 14-15, 19-20, 22-23, 34-37; Mem. Exs. Pt. 3 at 52, 61; *infra* § III.C.3 & n.12),[8] the court finds that his risk of developing severe complications from reinfection due to his medical conditions does not amount to an "extraordinary and compelling" reason for compassionate release.

//

//

---

the contraction of COVID-19, or preventing severe illness or death if she were to contract COVID-19").

[8] While there is no evidence that the BOP cannot manage these conditions, Mr. Kvashuk's medical records suggest that he has failed to take advantage of certain medical services offered to him. For example, at various points Mr. Kvashuk has refused to take his asthma medication as prescribed. (Medical Records at 9-10.)

ORDER - 11

### 3. Treatment of Medical Conditions

Mr. Kvashuk claims that the BOP has "not been providing him with the medical care he requires," thereby justifying compassionate release. (*See* Mem. at 5; Reply at 2-3.) To support this assertion, Mr. Kvashuk highlights the BOP's treatment of his heart conditions, hernia, and periapical abscess. (Mem. at 5 (stating that the BOP has repeatedly mismanaged his care, including [by] delaying surgeries); Reply at 2-3 (highlighting the BOP's treatment of the same and stating that the BOP has not and cannot adequately manage his heart conditions); Kvashuk Aff. at 1-2 (discussing the BOP's treatment of his medical conditions).) The Government argues that Mr. Kvashuk's complaints about the adequacy of his treatment are belied by his medical records and are better addressed through the BOP's administrative remedy process, a habeas petition, or a civil suit. (*See* Resp. at 6-7.)

The court finds that Mr. Kvashuk has not, at this time, shown that the BOP is unable to adequately manage his heart conditions, hernia, and abscess. (*See generally* Medical Records at 11, 14-15, 17-18 (reflecting numerous evaluations of the hernia and that surgery is scheduled for June 2023); *id.* at 13 (abscess treated with antibiotics); Mem. Exs. Pt. 2 at 1-4 (surgery consultation for hernia); Mem. Exs. Pt. 3 at 61 (evidencing follow-up EKG for heart conditions).[9]) While the court is sympathetic to Mr. Kvashuk's complaints and acknowledges that the BOP records reflect that there is sometimes a delay

---

[9] Additionally, although Mr. Kvashuk contends that he has not yet been seen by a doctor to address his April 27, 2023 EKG (Kvashuk Aff. at 1), the court cannot conclude that such a failure amounts to evidence that the BOP cannot adequately manage his heart conditions.

between his requests for medical services and treatment, his experiences do not rise to "extraordinary and compelling" circumstances where the COVID-19 pandemic has generally affected the speed of medical treatment in prisons and his individual complaints appear to have been addressed. *See, e.g.*, *United States v. Waxman*, No. CR18-0175RSL, 2021 WL 4148180, at *6 (W.D. Wash. Sept. 13, 2021) (concluding that the defendant's delayed medical treatment, and difficulty getting treatment, did "not rise to extraordinary and compelling circumstances" considering COVID-19's effects on the speed of treatment); *see also Extraordinary Circumstances*, Black's Law Dictionary (11th ed. 2019) (defining "extraordinary circumstances" as a "highly unusual set of facts that are not commonly associated with a particular thing or event").

Moreover, the court agrees with the Government's contention that a motion for compassionate release is not the proper vehicle to challenge the adequacy of the BOP's treatment of his medical conditions, which are essentially complaints challenging the conditions of his confinement. *See United States v. Berrelleza-Verduzco*, No. CR12-0062RSL, 2021 WL 1178189, at *2 n.1 (W.D. Wash. Mar. 29, 2021) (citing *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020)). Instead, Eighth Amendment arguments regarding the conditions of confinement are properly brought in a habeas petition or a direct civil claim. *Id.*; *see, e.g.*, *United States v. Miller*, No. 15-CR-00471-CRB-1, 2021 WL 2711728, at *4 (N.D. Cal. July 1, 2021) (observing that inmates have "alternative avenues to obtain improved medical care"); *United States v. White*, No. 19-CR00341-GPC, 2021 WL 3493220, at *4 (S.D. Cal. Aug. 9, 2021) ("Should [defendant] believe the Bureau of Prisons is violating

her right to adequate medical care, she is able to pursue a civil suit after exhausting appropriate administrative remedies.").

### 4. Post-Sentence Rehabilitation

Mr. Kvashuk argues that his post-sentence rehabilitation presents an extraordinary and compelling reason for compassionate release. (*See* Mot. at 1; Mem. at 5.) Mr. Kvashuk states that, while in prison, he has "taken advantage of programming, behavioral group-therapy, self-reflection time[,] and religious studies to better himself" and has worked as a GED tutor. (Mot. at 1; Mem. at 5 (providing more detail regarding Mr. Kvashuk's rehabilitative efforts); Mem. Exs. Pt. 1 at 3 (same).) Although the court commends Mr. Kvashuk for taking these strides and does not intend to minimize his progress, such rehabilitative efforts do not alone establish "extraordinary and compelling" circumstances warranting early release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a reduction in sentence.); *see, e.g.*, *United States v. Cruz-Cruz*, No. CR13-0049RSL, 2021 WL 1968389, at *5 (W.D. Wash. May 17, 2021) (determining that early release was not justified by defendant's accomplishments in prison where defendant completed thousands of hours of programming and apprenticeships; graduated with an associate's degree; was employed full-time for eighteen years; and served as a religious leader and a leader in a program for at-risk youth).

The court further finds that, even when Mr. Kvashuk's arguments are considered together, he has not established "extraordinary and compelling" reasons justifying compassionate release. Having determined that Mr. Kvashuk has not made the requisite

showing of extraordinary and compelling reasons warranting compassionate release, the court need not analyze whether a reduction in Mr. Kvashuk's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a). Accordingly, the court DENIES Mr. Kvashuk's motion for compassionate release.

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES Mr. Kvashuk's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1) (Dkt. ## 201, 223).

Dated this 7th day of June, 2023.

JAMES L. ROBART
United States District Judge